# Baker et al. *versus* Allegheny Valley Railroad Co.

| | |
|---|---|
| 95 | 211 |
| 101 | 9 |
| 95 | 211 |
| 139 | 188 |
| 95 | 211 |
| 150 | 606 |
| 95 | 211 |
| 152 | 397 |
| 95 | 211 |
| 156 | 249 |
| 95 | 211 |
| 157 | 244 |
| 95 | 211 |
| f220 | 1348 |

1. The duty which a master owes to his servant is to provide him with safe tools and machinery. When he does this he does not however engage that they will always continue in the same condition. Any defect which may become apparent in their use it is the duty of the servant to observe and report to his employer.

2. It is not negligence in the master if the tool or machine breaks, whether from an internal original fault, not apparent when the tool or machine was at first provided, or for an external apparent one produced by time and use, not brought to the master's knowledge.

3. A different rule, however, prevails where the tool or machinery is perishable. The master is bound to know that such tool or machinery will only last a limited time, and it is his duty to renew instruments of this character at proper intervals.

4. Declarations of an agent of the master made after an accident will not bind the master unless they are of such a character as to show that he had previous knowledge of the defect in the machinery.

5. An employee of a railroad company was killed while at work by the breaking of a rope on a derrick in use and belonging to the company. It was shown that the rope externally appeared sound, but had been in use for two or three years, and continually exposed to the weather, and there was evidence that it was actually rotten when the break occurred. There was evidence also that such a rope, after exposure for a year or more, becomes unsound, although this one betrayed no outward sign of decay. *Held,* that there was evidence for the jury upon the question whether such a rope was a sound one, and if not the railroad company would be liable for one injured by reason of such unsoundness.

June 16th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Clearfield county:* Of May Term 1880, No. 151.

Trespass on the case by Bridget Baker and others, the wife and infant children of Bartley Baker, deceased, against the Allegheny Valley Railroad Company, to recover damages for the death of said Bartley Baker, alleged to have been caused by the negligence of defendant. Plea, "not guilty."

Baker was one of a gang of men working on a gravel train, and, at the time he was killed, in 1876, was engaged along with others in hoisting heavy stones upon the cars of the train.

In loading the stones, the men used a derrick, which consisted of an upright wooden mast, about twelve inches in diameter at the ground, and about fifty feet in height, and held in place by four guy ropes attached to the top of the mast, and the other end of the ropes anchored to posts in the ground. To the mast of the derrick was attached a crane with pulley-blocks, tackle, &c

[Baker *v.* Allegheny Valley Railroad Co.]

On the morning the accident happened the men had loaded two or three stones. Baker was standing on one of the cars, in the act of obeying an order of the man in charge of the work, and a heavy stone was being raised, when one of the guy ropes gave way on account of the rottenness of the rope, and the mast of the derrick fell with great force, striking Baker across the breast, from the effects of which he died within an hour after.

At the time Baker was injured, he was working under the direction of Daniel Nolan, who then had, under the defendant company, the exclusive charge and direction of the gravel train, and men connected with it, and had authority from the company to hire and discharge the men who worked in his gang.

William McGregor was superintendent of the work where Baker was killed.

The derrick was furnished by the defendant company, and had not been used for a long time previous to the day Baker was killed. It was an old structure, erected in 1872 or 1873, and it was in evidence the guy ropes had been exposed constantly to the weather, without change, for a long time; were old, decayed and rotten, and were unsafe and unfit for the purposes for which the derrick was used at the time it fell.

There was also testimony of experts, to the effect that such ropes, after being exposed to the weather for a year, were unsafe and unfit to sustain a heavy weight.

The plaintiffs proposed to prove that Daniel Nolan, the superintendent of the gravel train, a few minutes before the accident happened, said to the witness, or in his hearing, that one part of the men should go to one side of the derrick, as it was not safe; this order not being given to Bartley Baker, or in his hearing, to the witness' knowledge. Objected to, because the offer is immaterial and irrelevant; because no order there given by Nolan could affect defendants or make the company liable in damages, he being a co-employee; and because such order may have been given and the witness not have heard it; and the testimony does not show such order was not given to Baker, if it was material to prove that it was not. Objections sustained.

Plaintiffs' second offer was as follows: What did Mr. McGregor say, if anything, at the time the rope was examined, immediately at the time of the accident, as to its cause?

Defendants objected to the question because it was immaterial and irrelevant under the proof in the stage of the cause; and because the plaintiffs had not shown that McGregor held such a relation to the defendants as would make his declarations admissible to affect the defendants. Objections sustained.

When the plaintiffs closed their case the court, on motion of defendants, entered a compulsory nonsuit, and the court in banc subsequently refused to take it off. The plaintiffs then took this writ,

alleging that the court erred in rejecting the foregoing offers of evidence, and refusing to take off the nonsuit.

*Frank Fielding* and *George A. Jenks*, for plaintiffs in error.— Nolan had charge of the gravel train and the men; had authority from defendants to hire and discharge these men; his agency was established by the evidence in the cause, and this agency made his acts and knowledge those of the defendants: Woodwell & Co. v. Brown et al., 8 Wright 121. The declarations of Nolan made a few minutes before the accident occurred, concerning the unsafe condition of the derrick, were, therefore, admissible: Mullan v. Steamship Co., 28 P. F. Smith 25; Hanover Railroad Co. v. Coyle, 5 Id. 396; Wharton on Negligence, sect. 1173. The same rule and authorities will apply to the declarations of McGregor, the superintendent.

It was the duty of the defendants to furnish Baker with safe instrumentalities with which they required him to work. He had a right to rely upon the soundness and safety of the derrick, without his inspection or examination of it. It was furnished by the company, and should have been made and maintained safe and sufficient for the purpose for which it was used.

Baker is not chargeable with want of ordinary care in not anticipating the negligence of the defendants. It does not matter whether the defendants, through their officers or agents, knew or did not know that the ropes of the derrick were rotten from exposure to the weather; it was their duty to examine—not to know it, in such case, was gross negligence. The first duty of Baker to his employer was obedience, and it cannot be argued that because he went to work under a derrick, by order of his employer's agent, where he had not worked before, without first examining the structure, that he thereby waived the duty his employers owed him, and that he assumed all risks of danger, even an extraordinary peril: Ardesco Oil Co. v. Gilson, 13 P. F. Smith 145; Pennsylvania Railroad Co. v. Ogier, 11 Casey 60; Caldwell v. Brown, 3 P. F. Smith 453; Fraser v. Pennsylvania Railroad Co., 2 Wright 103; Patterson v. Pittsburgh and Connellsville Railroad Co., 26 P. F. Smith 393; O'Donnel v. Allegheny Valley Railroad Co., 9 Id. 248; Mullan v. Steamship Co., *supra;* Oak Ridge Coal Co. v. Reed, 5 W. N. C. 3; Addison on Torts, sect. 254 and notes; Noyes v. Smith, 28 Vt. 59; Bessex v. Chicago and N. W. Railway Co., 1 Wis. Leg. News 162; Smith v. Railroad Co., 42 Wis. 255; Cooker v. Railroad Co.; 36 Id. 657; Ryan v. Fowler, 24 N. Y. 410; Lansing v. N. Y. Central Railroad Co., 49 Id. 521.

While Nolan and Baker were working for the same employers they were not such co-servants as would release the defendants for their negligence. Nolan stood in the place of the company towards Baker: Clarke v. Holmes, 7 H. & W. 943; Wedgewood v.

[Baker *v.* Allegheny Valley Railroad Co.]

C. and N. W. Railway Co., 41 Wis. 478 ; Wharton on Negligence, sect. 222 ; Corcoran *v.* Holbrook, 59 N. Y. 517 ; Flike *v.* Boston and Albany Railway Co., 53 Id. 549.

*H. T. Beardsley* and *Wallace & Krebs,* for defendants in error. —It was not pretended or alleged at the trial that either Nolan or McGregor held the position of superintendent of the company, or that they were doing anything else than working in the common employ of the defendants in the construction and finishing up of the work of building the Bennett's Branch road. They were in every sense of the word co-employees of Baker, working with him in the same common work, and performing duties and services for the same general purposes. They did occupy a different grade, but it did not change their relation to each other. The ultimate authority of the company was not delegated to either Nolan or McGregor, and, therefore, their declarations could not affect the company : Patton *v.* Minesinger, 1 Casey 393 ; Wood's Law of Master and Servant 809 ; Lehigh Valley Coal Co. *v.* Jones, 5 Norris 432. For the same reason this case is distinguishable from Mullan *v.* Steamship Co., *supra,* and kindred cases. The defendants were not bound to warrant that the derrick would always continue to be safe. Baker knew what the derrick was used for, and had more opportunity to know whether or not the guy ropes were defective than the defendants, and if he knew there were defects and gave no information, he must be held to have assumed all the attendant risks : Ryan *v.* Cumberland Valley Railroad Co., 11 Harris 384 ; Wood on Master and Servant 755, 800 ; Wharton on Negligence, sects. 212, 217 ; Mud River and Lake Erie Railroad *v.* Barber, 5 Ohio 541 ; Mansfield Coal Co. *v.* McEnery, 10 Norris 185 ; Frasier *v.* Pennsylvania Railroad Co., 2 Wright 104. It would be impossible for a railroad company to exercise such a supervision of its employees and machinery as is here demanded.

Chief Justice SHARSWOOD delivered the opinion of the court, October 4th 1880.

The deceased, to recover damages for whose death this action was instituted in the court below, was a laborer employed by the defendants in hoisting stones upon the cars of a gravel train. For this purpose a derrick was used on an upright wooden mast held in place by guy ropes, and while in the act of raising a heavy stone, one of the ropes broke and the mast of the derrick fell with great force on the deceased, inflicting an injury from the effects of which he died within an hour.

Whether the defendants were prima facie liable was the question ; in other words, did the evidence adduced by the plaintiffs make out such a case as ought to be submitted to the jury ? The learned judge below thought not, and accordingly nonsuited the plaintiffs.

[Baker *v.* Allegheny Valley Railroad Co.]

The facts in regard to the rope may be briefly stated. It was about two inches thick, and there was every reason to believe that it was originally sufficiently strong for the purpose for which it was used. But there was evidence that the derrick was an old structure, and the rope at the time of the accident had been in use two or three years, perhaps more. During this time it had been exposed to the weather. Several witnesses who examined the rope immediately after the accident testified that at the place where it had broken, it was rotten and unsafe, and there was evidence that such was commonly the result of the exposure of such a rope to the weather, for that or a much shorter period of time.

There is no dispute as to the law applicable to such a case. It has been long and well settled. A servant assumes all the ordinary risks of his employment. He cannot hold the master responsible for an injury which cannot be traced directly to his negligence. If it has resulted from the negligence of a fellow-servant in the same employment, he must look to him and not to the master for redress. The master does not warrant him against such negligence. The duty which the master owes to his servants is to provide them with safe tools and machinery where that is necessary. When he does this, he does not, however, engage that they will always continue in the same condition. Any defect which may become apparent in their use it is the duty of the servant to observe and report to his employer. The servant has the means of discovering any such defect which the master does not possess. It is not negligence in the master if the tool or machine breaks, whether from an internal original fault, not apparent when the tool or machine was at first provided, or from an external apparent one produced by time and use not brought to the master's knowledge. These are the ordinary risks of the employment which the servant takes upon himself: Ryan *v.* The Cumberland Valley Railroad Co., 11 Harris 384.

But do these rules apply to such an instrument as a rope used in a derrick which is employed in raising heavy weights? No doubt a perfectly new rope and one to all appearances sound may break, and the master would not be responsible for the consequence, having furnished a rope of the proper size for the purpose, to all appearance sound. But there was evidence in this case, sufficient certainly to make a question for the jury, that such a rope after having been used for a year or more, and exposed during that time, as the one in question seems to have been, was no longer a safe rope, even though it did not outwardly exhibit any signs of decay. The master is bound to know that a rope under such circumstances will only last a limited time. It will not do for him to furnish a sound rope and then fold his arms until by actually breaking it is demonstrated to be insecure. It will not do to say that the servant is bound to know this as well as his master, and to warn him that

after such a time he ought to procure a new rope. Is the servant bound to notify the master of that which he knows or ought to know himself without such information? He knows how long the rope has been in use. The servant may not know. In this case the deceased did not know. It appears to have been the first day that he worked on the derrick. There was nothing to attract his notice in the outward appearance to show how long it had been in use. It is the duty of employers to renew instruments of this character at proper intervals. The expense would certainly not be great, and a due regard to the lives of their servants imperatively demands it.

The order given Nolan just before the accident was rightly excluded. It did not show that he knew of the defect in question, but was a caution given to the men to keep out of the way of an accident which might happen to the best rope. He was a competent witness and might have been examined on the part of the plaintiff. As to the declarations of McGregor, it did not sufficiently appear that his relations to the work were such as to make his declarations evidence. As the case goes back to another trial, it can be shown what his office and duties were. Besides, it would appear that the declarations proposed were made after the accident, and were not of such a character as to show that he had previous knowledge of any defect of the rope. After seeing the broken rope, his opinion that it was an unsafe rope, would not be binding on the company more than the declaration of the opinion of any other witness. Unless the declaration was to the effect that he knew before the accident that the rope was unsafe, it could not fall within the cases of Hanover Railroad Co. *v.* Coyle, 5 P. F. Smith 396, and Mullan *v.* Philadelphia & Southern Mail Steamship Co., 28 Id. 25.

Judgment reversed, and *procedendo* awarded.