## LOMBARD ETC. PASS. RY. CO. v. ANNA CHRISTIAN.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued January 16, 1889—Decided February 4, 1889.

(*a*) In an action against a passenger railway company to recover damages for personal injuries suffered by the plaintiff and charged to the alleged negligence of the driver, the driver testified, referred to a written statement he had signed : " The paper says, I started the car too soon. What I said was, I must have started it too soon."

(*b*) The driver testified also that he had been discharged immediately after the accident and he had seen the president of the company about it : "He asked me, why I was discharged, and I said on account of an old lady falling from my car, and he says, You had better say, an old lady being thrown from your car."

1. In such case it was error for the trial judge to charge : " The driver's evidence here is that he must have started the car before the plaintiff had time to get off, and that he was dismissed, on the ground that his negligence had produced the accident, by the president of the company."

2. The plaintiff's testimony showing that the negligence, if any existed, was in the driver's starting the car too quickly to enable her to alight, it was error to charge the jury that the construction of the car was to be considered, with the other evidence, as bearing upon the question of the defendant's negligence.

3. A witness who is in no sense an expert, may testify to distinct facts observed by himself indicating the physical condition of the plaintiff at a time referred to, but may not state how the plaintiff suffered in any part of his or her person.

4. The declaration made to the driver by the president of the company, as above quoted, that officer having no personal knowledge of the facts of

the occurrence, was inadmissible as evidence either that the accident was the result of the driver's negligence, or of any negligence at all.

5. Moreover, it is imperative, in cases of alleged tortious conduct such as negligence, that, unless the act is specially authorized, the admissions of an agent must be part of the res gestae, otherwise they are mere hearsay : Baker v. Railroad Co., 95 Pa. 211; American Steamship Co. v. Landreth, 102 Pa. 131 ; Oil City F. S. Co. v. Boundy, 122 Pa. 449.

6. Under the testimony adduced in this case, it was not error to refuse to instruct the jury that there was no evidence of negligence on the part of the defendant.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 49 July Term 1888, Sup. Ct.; court below, No. 678 September Term 1887, C. P. No. 1.

On October 24, 1887, Anna Christian brought trespass against the Lombard & South Street Passenger Railway Company, to recover damages for personal injuries charged to the alleged negligence of the defendant company. Issue.

At the trial on March 8, 1888, the plaintiff testified that in October, 1887, she was a passenger in a car of the defendant company, and proceeded :

"On 7th of October, I went to the city, and on my way coming back, at Thirty-sixth and Spruce streets, I asked a lady to pull the bell, as I was too little. In coming out, I had hold of the handle of the car on the platform, and I was thrown to the ground ; when the bell rang, the car stopped; getting out of the car on the platform, getting to the lower step, I was thrown to the ground. One of the officers came and picked me up and helped me into the hospital. I was there for five weeks under treatment. I was suffering of course from my fall. I broke my arm and cut my head severely."

"Q. Tell us what caused you to be thrown ? A. Owing to the driver not being careful. If he had been careful I would not have received the hurt: owing to good reason. I don't think he would do it intentionally, but he might do it through carelessness.

"Q. What do you mean by that? A. Why, of course, he didn't stop and give me time to get off, that is what I think. The driver did stop at Thirty-sixth and Spruce, but not long enough for me to get off."

### Statement of Facts.

Mary A. Christian, the plaintiff's daughter, sworn:

"I dress my mother; she is not able to dress herself. Before October 7th, she was perfectly healthy, and able to take care of herself.

"Q. In what respect does your mother differ from what she was in October, before she was hurt? A. My mother suffers in the head."

Defendant's counsel moved to strike out this answer.

"Q. In what respect is your mother physically different from what she was prior to October 7th?"

Objected to.

By the court: Offer admitted; exception.[6]

"A. Not able to lift a broom or do any kind of housework, and she suffers very much from her stomach.

"Q. Does she suffer in any other way?"

Objected to, and defendant's counsel moved to strike out part of the answers to the previous questions, viz.: that she suffers in the head, and that she suffers very much from her stomach.

By the court: Motion denied; exception.[7]

William Brutchfield, police officer, sworn:

"Saw Mrs. Christian fall off the car. The first thing I saw was, the car stopped; the car started to move off again, and then the old lady came tumbling off. After I seen her fall off, I went down; the driver of the car was picking her up, and he gave her in my charge, and I sent for patrol sergeant and he took her to hospital. Car going west. She fell off sideways on the cobble stones."

On cross-examination, the witness said:

"No one standing there with me. I was looking at the car. Saw the driver. Saw no one in the car, only this woman falling off. The first time I saw her she was falling off. I think when she fell she was two and a half yards from the curbstone. I saw her fall. She fell about one and a half yards from the rails. She was nearer rails than the curb. I don't know whether she was on any step of the car or not, but I saw her in the act of falling. I did not see her on the car. I did not see her on the car at all. I first saw her falling, and I am most sure she fell off the car. The car had just started to move. I saw her come tumbling off the car. . . . . I did not see her anywhere at

all, only lying in the street.   The northern rails are about four and a half yards from curb, and southern rails the same."

The plaintiff's case then rested.

On the part of the defendant company, Elisha Fogg, the driver of the car, sworn :

"I arrived at Thirty-sixth and Spruce; heard bell ring, stopped the car and I looked in, I saw an old lady passing out of the car.   I watched her until she stepped down off of the platform out of my sight.   I then started the car, and had proceeded but a short distance when some one notified me that the old lady had fallen.   I then immediately stopped the car and went back, and found that she had fallen in the street. Assisted in raising her to her feet, and found that she had cut her head and that her right arm was injured.   I took her name and residence, and left her in charge of an officer, who took her to the hospital. . . . . I could not say how long the car stopped, but between the time I stopped and the time I started, I think sufficient time elapsed to allow any ordinary person to leave the car.   When I went back I found she had fallen about midway between the curb and the rails.   The rails are about eleven or twelve feet from the curb.   She was about five and a half feet or six feet from the rails.

"Q. In the position in which you found her, was it possible, in your opinion, for her to have fallen on to the place where she was, from your car?"

Objected to.

By the court: Objection sustained; exception.[8]

On cross-examination, the witness testified that the car was a "bobtail," the driver acting as conductor; that the accident was investigated between Friday and Monday, and he was discharged.

"Q. Were you discharged by the president of the company on Monday following the accident, in consequence of this accident, and was the reason given by the president to you, because you had thrown this old lady off the car?"

Objected to.

By the court: Offer admitted; exception.[10]

"A. I was discharged by note from Parsons on Monday after the accident, and then I went to see Parsons the next day, to see why I was discharged.   He asked me why I was dis-

charged, and I said, on account of an old lady falling from my car, and he says, You had better say, an old lady being thrown from your car."

The witness was shown a written statement he had signed in the office of counsel. Having read the statement and admitted it, he said:

"It is right that I looked back and saw some one lifting her from the street. The paper says, I started the car too soon. What I said was, I *must* have started it too soon."

George Martin, sworn:

Witness was in the car at the time; remembered plaintiff being in the car. "Did not see her go out. Saw her lying in the street about two feet or two and a half feet from the curb. . . . .

"Q. From the position in which you saw this lady lying, was it possible for her to have fallen in getting off the car?"

Objected to.

By the court: Offer overruled; exception.[9]

The defendant's case closed.

The court, BIDDLE, J., charged the jury as follows:

This action is a suit for negligence. The plaintiff's claim is for damages by reason of negligent conduct on the part of the railroad company by which she has been injured. Before there can be a recovery in a case of this kind, you must be satisfied that the company is guilty of some negligence bringing about the injury, and that the plaintiff is guilty of no negligence on her part contributing to bring about the accident. The evidence must satisfy you: 1. That the company was negligent. 2. That the plaintiff was not negligent.

The negligence here complained of by the plaintiff is that she was a passenger on board of one of the street-cars commonly known as Slawson or bobtail cars, which is a car having only a driver and no conductor. It is the obligation of the railway company to carry its passengers with safety. That includes the duty of giving an ordinary and reasonable opportunity to its passengers to get off of the car. It is the duty of the company to carry its passengers safely and give them a reasonable opportunity to get off its cars without injury. The plaintiff's complaint is, that wishing to alight from the car, the

Charge of Court below.

bell was pulled and when she was about to get off the car started before she could do so, and while she was getting off the car, she was thrown down and injured.

The main facts in the case are not disputed. It is not denied that she was in the car, that the car was going west, that she wished to get off the car, that the bell was rung to stop the car, and that she started to get off the car.

[You have heard the evidence on both sides, the plaintiff's, and that for the defendant.

The driver's evidence here is, that he must have started the car before the plaintiff had time to get off, and that he was dismissed, on the ground that his negligence had produced the accident, by the president of the company. That fact is not controverted by any evidence on the part of the company. The president is not here within the jurisdiction of the court, and no attempt has been made on the part of the other officers of the company to deny the truth of this allegation.] [3] If you believe that this accident happened by reason of the car starting while the plaintiff was in the act of getting off and before she had time to alight, then the company is responsible for the damage sustained by this plaintiff.

The character of the injuries sustained by her has been detailed to you. It appears that the bone of her right arm was broken, and that she received a scalp wound on the head. . . . . If you believe that the railroad company has been guilty of negligence, then it is your duty to consider what damages should be awarded to the plaintiff for the injuries she has sustained. Anything like vindictive damages is out of the question in this case. Only compensatory damages can be awarded. In giving damages you must take into consideration the pain and suffering the plaintiff has endured, her loss of time, and any further loss of earning power that you may find has been occasioned by the injury.

In passing upon all these questions juries are apt to get false impressions of their duty. They are giving away other people's money, and they are apt to be led away by their sympathies with the injured person. In considering this question you ought to act as business men, and consider it as if it were a suit against yourselves, giving such damages as the evidence justifies, and not disregarding the ordinary rules.

[In regard to the evidence as to the construction of this car, I charge you that this is to be considered, with all the other evidence in the case, as bearing upon the question of defendant's negligence. The company has a right to put on such a car as the wants of the community, having regard to the neighborhood and number of people who may ride, may require. In a rural district, where few people ride on the cars, and where there are not many people or vehicles to be expected on the street, it is not negligence in itself to run cars with one person acting as both driver and conductor. The whole case is to be considered with reference to the kind of car, and whether the construction of the car would prevent the driver from attending to his duties as he should have done.] [5]

The defendant requests the court to instruct the jury:

1. That there is no evidence in this case of negligence on the part of defendant.

Answer: Refused.[1]

2. That under all the evidence in this case the jury should find for the defendant.

Answer: Refused.[2]

3. There is no evidence to warrant the jury in finding vindictive damages.

Answer: Affirmed.

4. The defendant has the right to run cars on the street on which this accident happened, and has also the right to run cars of the kind in which this lady took passage, and the passenger in such case has no right to ask the jury to give damages by reason of the construction of the car or of its being run, under the rules, by a driver acting also as conductor.

Answer: Answered in general charge.[4]

The jury returned a verdict in favor of the plaintiff for $2,750. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendant took this writ and assigned as error:

1, 2. The refusal of the defendant's point.[1] [2]

3. The part of the charge embraced in [ ][3]

4. The answer to the defendant's point.[4]

5. The part of the charge embraced in [ ][5]

6, 7. The admission of plaintiff's offers.[6] [7]

Opinion of the Court.

8, 9. The refusal of defendant's offers.[8] [9]

10. The admission of plaintiff's offer.[10]

*Mr. Meyer Sulzberger*, for the plaintiff in error:

1. Upon the first and second assignments of error, counsel cited: Stager v. Pass. Ry. Co., 119 Pa. 70 ; Phil. & R. R. Co. v. Schertle, 97 Pa. 455 ; Huey v. Gahlenbeck, 121 Pa. 238.

2. Upon the third assignment of error : Douglass v. Mitchell, 35 Pa. 440; Penn. Canal Co. v. Harris, 101 Pa. 80.

3. Upon the sixth and seventh assignments of error : U. B. Mutual Aid Soc. v. O'Hara, 120 Pa. 256.

4. Upon the tenth assignment of error : Bigley v. Williams, 80 Pa. 107 ; Baker v. Allegheny V. R. Co., 95 Pa. 211 ; Amer. Steamship Co. v. Landreth, 102 Pa. 131 ; B. & O. Emp. R. Ass'n v. Post, 122 Pa. 579 ; Oil City F. S. Co. v. Boundy, 122 Pa. 449.

*Mr. Abraham M. Beitler* (with him *Mr. M. Verner Simpson*), for the defendant in error :

That, under the evidence, the question of negligence was clearly for the jury, counsel cited: Penn. R. Co. v. Peters, 116 Pa. 206.

OPINION, MR. JUSTICE GREEN :

The learned court below said in the charge to the jury, " The driver's evidence here is that he must have started the car before the plaintiff had time to get off, and that he was dismissed, on the ground that his negligence had produced the accident, by the president of the company." An examination of the driver's testimony shows that this was a mistaken representation of what he said. What the driver did testify on this subject was as follows : " Heard bell ring, stopped the car and I looked in, I saw an old lady passing out of the car. I watched her until she had stepped down off the platform out of my sight. I then started the car and had proceeded but a short distance when some one notified me that the old lady had fallen. I then immediately stopped the car, and went back and found that she had fallen in the street." This was the actual testimony of the driver, as delivered on the trial, in relation to the facts of the occurrence. Of course it was error

to say of that testimony that the driver's evidence here, that is, on the trial, " is that he must have started the car before the plaintiff had time to get off," and as this is a very material part of the case and may easily have misled the jury, the third assignment of error must be sustained. The error of the learned court was an inadvertence which grew out of another portion of the driver's testimony. He was interrogated respecting another version of the matter which he had given at another time and which was reduced to writing and signed by himself. The paper being handed to him he read it and then said, speaking of its contents, " It is right that I looked back and saw some one lifting her from the street. The paper says I started the car too soon. What I said was, I must have started it · too soon." It will be seen at once that he was speaking of what he had said on the former occasion and was not testifying to the actual facts of the occurrence. It would have been a fair subject of argument by counsel for the plaintiff, and even of comment by the court, to the effect that inasmuch as he had formerly said he must have started the car too soon, that such must have been the fact notwithstanding his present testimony to the contrary, but in no point of view was it correct for the court to say positively that he testified in that way on the trial.

We think the remainder of the portion of the charge covered by the third assignment was also a mistaken presentment of the testimony. The court treats the testimony of this witness as direct, distinct, and affirmative proof that the president of the company had discharged the driver because " his negligence had produced the accident," and then by way of comment he remarks to the jury that " that fact is not controverted by any evidence on the part of the company . . . . . and no attempt has been made on the part of the other officers of the company to deny this allegation." Now in point of fact, there was no distinct proof by any witness that the driver was discharged because his negligence had produced the accident. There was at best but a presumption to that effect, and not by any means a strong one, derived by inference from the driver's testimony. But it might very easily be that the driver was discharged merely because the accident occurred while he was driving and without any reference to the question whether it

was his negligence that produced the accident. The president of the company had no personal knowledge of the accident nor was he or any other officer of the company called to prove either the fact or the cause of the driver's discharge, and it was scarcely a fair way to treat the testimony as if it was direct and uncontroverted proof that the driver had been discharged by the president because his negligence produced the accident.

We think the portions of the charge covered by the fourth and fifth assignments are objectionable. They tended to lead the jury to infer that the mere construction of the car was proof of negligence in producing this particular accident. As the accident arose from a totally different cause, it was error even to intimate to the jury that they might consider the method of construction as proof of negligence. These assignments are therefore sustained.

The sixth and seventh assignments are sustained because the witness, Mary A. Christian, was in no sense an expert, and of course was incompetent to testify to what was mere opinion in respect to her mother's internal injuries. She could state distinct facts observed by herself, but certainly could not give her opinion that her mother suffered in her head and in her stomach. As to those subjects, she could have no actual knowledge of her own and no information, except from her mother's declarations, which, of course, would be inadmissible both as hearsay and secondary evidence.

We think the tenth assignment is also sustained. The evidence offered and received was not an admission by the president of the company either that the accident was the result of the driver's negligence or of any negligence at all. It was but an admission that the driver was discharged because the accident had occurred. It could not be a binding admission that the accident was the result of the driver's negligence, because the president was not present at the time of the accident, and had no knowledge of the facts of the occurrence and hence knew nothing to which he could testify, directly or by admission. What the president said could at the best be merely an opinion of his own derived from the information of others, and hence could have no element of original testimony or of any legitimate substitute for it.

In Bigley v. Williams, 80 Pa. 107, we held that the declaration of the pilot of a steamboat, made within an hour after the occurrence of an accident, that the collision was caused by his neglect, was inadmissible as not being part of the res gestae. In the case of Baker v. Allegheny V. R. Co., 95 Pa. 211, the offer was to show a declaration of the defendant company's superintendent, made after the accident occurred, that the rope which caused the accident was unsafe. It was held that unless it appeared that the superintendent had had a previous knowledge of the rope, and the declaration was to the effect that he knew before the accident that the rope was unsafe, his opinion that it was unsafe was inadmissible. In Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449, we said: " It is imperative in cases of alleged tortious conduct such as negligence, unless the act is specially authorized, that the admissions of the agent must be part of the res gestae. Otherwise they are hearsay. The agent himself can be called to prove the state of facts attempted to be proved by his admissions."

Conceding that on account of the official position of the president of the company there is a wider responsibility for his admissions than in the case of an ordinary agent, a brief consideration of the testimony received under this assignment establishes its incompetency. The question put to the witness was not cross-examination in any point of view and should have been rejected for that reason. But the fact of the driver's discharge was of no relevancy, except as it tended to prove the fact of negligence of the driver in the occurrence of the accident. That negligence was an inference to be drawn by the jury from the specific facts of the case, and not from the inferences or opinions of any one. Hence the declarations of any one, no matter who he might be, who was not present and had no personal knowledge of the transaction, could prove nothing more than his own opinion as to the ultimate and essential fact of negligence. This would be so where the declarations were directly to the point that there was negligence. But in the present case the evidence was quite short of this. The driver said the president " asked me why I was discharged, and I said on account of an old lady falling from my car, and he says you had better say an old lady being thrown from your car." How would this prove or even tend to prove that

in point of fact the old lady was thrown from the car? It might tend to prove that the president thought so, but his thinking so would depend upon the correctness of the information he had received from others, to which of course he could not testify directly, and most certainly not indirectly by way of admission.

In the case of the American Steamship Co. v. Landreth, 102 Pa. 131, we held it to be error, in an action by a passenger against a steamship company to recover damages for an injury sustained on board the vessel, to admit the declaration of the captain of the vessel made to the plaintiff and to another passenger immediately after the accident, that the place where it occurred was a very dangerous part of the ship and that he would have it remedied immediately, for the reason in part that it was a mere expression of opinion on the part of the master.

The language used by the president of the company in this case does not necessarily import anything more than his displeasure with the driver and is proof of absolutely nothing as to the actual facts of the occurrence. The tenth assignment is sustained. The remaining assignments are not sustained.

Judgment reversed and new venire awarded.