# Fredericks v. Atlantic Refining Co., Appellant.

*Negligence—Dangerous agency—Gasoline—Serving automobile with gasoline—One of two causes—Contributory negligence—Sudden peril.*

1. Where a person invites another to his place of business, he assumes towards the invitee certain duties, and if he negligently

1925.]                        Syllabus.

permits a danger of any kind to exist, which results in injury to the person invited, without negligence on the latter's part, the invitor is answerable for the consequences.

2. A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involves little or no risk.

3. In such case, no absolute standard can be fixed by law, but every reasonable precaution suggested by experience, and the known danger, ought to be taken.

4. Where there is direct evidence that a fire which injured plaintiff was due to defendant's negligence, the causal connection of plaintiff's injuries through defendant's negligence is established, and if other independent causes did exist they would not relieve defendant of liability.

5. Where it appears that a valve used in supplying gasoline to automobiles at a gasoline station should be frequently inspected, and it appears that the valve had not been inspected at all, a customer injured by reason of a defect in the valve which might have been discovered by inspection may recover damages from the owner of the station.

6. A person cannot be charged with negligence simply because he failed to anticipate negligence on the part of another which resulted in injury.

7. Where a plaintiff entered defendant's premises to secure gasoline he had the right to assume that defendant would provide proper and safe appliances with which to work, and careful servants.

8. If defendant fails in the performance of such duties, and plaintiff, suddenly placed in a position of peril, acts carelessly or mistakenly, defendant cannot be heard to complain, for it was his misdeed that caused plaintiff to act as he did.

9. The fact that an owner of a gasoline station does not require acetylene lights on automobiles to be put out when cars are being served with gasoline, is strong evidence that such lights are not inherently dangerous.

*Appeal—Practice, C. P.—Trial—Evidence—Motion to strike out —Harmless error—Custom.*

10. An assignment of error directed to the evidence of a witness as to a custom will not be sustained, where it appears that the answer of the witness had been given before the objection was made, that there was no motion to strike out the evidence, and that two other witnesses had testified to the custom in question.

*Practice, C. P.—Trial—Evidence—Carlisle tables — Charge — Duty of trial judge.*

11. Carlisle tables are liable to prove a dangerous element in the trial of causes when combined with tables showing present worth, and it is the duty of judges to be very particular to instruct juries as to their effect.

*Negligence—Damages—Salary—Earning power—Pain and suffering—Verdict not excessive.*

12. A verdict and judgment of $30,000 for personal injuries will be sustained where it appears that plaintiff was subjected to horrible pain and suffering, that some of his injuries were incurable, that it would be necessary to treat them for many years, that he was earning $56 a week at the time of the accident, that he had lost in actual wages about $6,000, that his bills for medical attendance amounted to $1,100, and that his continued medical treatment in the future would run up to a large sum.

13. In such case there is a zone of uncertainty as to loss of earning power, and compensation for pain and suffering, which is exclusively within the jury's province to determine.

Mr. Justice SCHAFFER dissented on the ground that the amount of damages allowed was excessive.

Argued November 25, 1924. Appeal, No. 38, Jan. T., 1925, by defendant, from judgment of C. P. No 5, Phila. Co., Dec. T., 1921, No. 2874, on verdict for plaintiff, in case of Harry Fredericks v. Atlantic Refining Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for personal injuries. Before BALDRIGE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $35,000, on which judgment was entered for $30,000. Defendant appealed.

*Errors assigned* were, inter alia, various instructions, ruling on evidence, and refusal of new trial asked for on ground of excessiveness of verdict, quoting record.

*Francis Shunk Brown,* with him *A. Carson Simpson, Thomas F. Gain,* and *Ira Jewell Williams,* for appellant. —Under the circumstances shown, it might reasonably be inferred that plaintiff's injuries resulted from any one of several causes, for some of which defendant would not be legally responsible: East End Oil Co. v. Torpedo Co., 190 Pa. 353; Ott v. Boggs, 219 Pa. 614; Baker v. Irish, 172 Pa. 528; Coshulich v. Oil Co., 122 N. Y. 118; Alexander v. Water Co., 201 Pa. 252.

Plaintiff was guilty of contributory negligence as a matter of law: Mitchell v. Stewart, 187 Pa. 217.

It was error to admit evidence that other drivers left their acetylene lights burning, while filling their gasoline tanks.

The Carlisle Tables should have been excluded: Steinbrunner v. Ry., 146 Pa. 504; Kerrigan v. R. R., 194 Pa. 98; Pauza v. Coal Co., 231 Pa. 577; Seifred v. R. R., 206 Pa. 399.

The verdict was, even as reduced, grossly excessive and manifestly beyond reason: Gail v. Phila., 273 Pa 275; Johnson v. R. R., 278 Pa. 491; Helmstetter v. Ry., 243 Pa. 422.

*Francis M. McAdams,* with him *William H. Wilson,* for appellee.—The case was for the jury: Koelsch v. Phila., 152 Pa. 355; Shirey v. Gas Co., 215 Pa. 399; Gudfelder v. Ry., 207 Pa. 629; Woodruff v. Painter & Eldridge, 150 Pa. 91; Bier v. Mfg. Co., 130 Pa. 446; McGuigan v. Beatty, 186 Pa. 329; Liptak v. Kurrie, 244 Pa. 117; Eldridge v. Mfg. Co., 240 Pa. 321; Dyer v. Bridge Co., 198 Pa. 182; Rapho & West Hemofield Twp. v. Moore, 68 Pa. 404.

OPINION BY MR. JUSTICE KEPHART, January 5, 1925:

Harry Fredericks, engaged in driving a Packard Truck between Philadelphia and New York, was severely burned on December 11, 1921, at defendant's gasoline

station in Philadelphia, where he had stopped for gas. He recovered a verdict and judgment.

On the night of the accident, appellee drove his truck into appellant's yard, stopping opposite pump Number 8. He was in an enclosed cab, about five feet wide, four feet deep and four and one-half feet high, with a door (half glass) in each side. The gasoline tank was in the cab, under the seat, its opening being close to the center. The truck was equipped with two acetylene lights on the front and outside of the cab, about two feet below the top of the lower half of the windshield. The lights were lit and the upper half of the windshield was open. The lamps were ordinary acetylene lamps, made of copper, with a ridge at the top. On each side were four vent holes.

The gasoline supply was stored in large tanks under ground, and forced under air pressure through the hose attached to the pump, to supply customers. The gasoline line was equipped with two shut-off valves, one a hand valve at the pump, and the other at the nozzle of the hose, the latter being called a "trigger" valve, operated by pressing a key. It was in its normal position when closed.

When appellee arrived at the station a young lady was in charge. On requesting gasoline, the hose was handed through the window of the door on the left side of the truck. Plaintiff, after removing the cover from the tank, inserted the nozzle in the opening, pressed the key, and the tank began to fill. During the operation he faced the tank or seat, his back partly towards the windshield. He leaned down to better control the gasoline as it ran into the tank. When within three or four inches of the top he released the key to stop the flow; the valve failed to work. He called to the attendant to shut off the gasoline at the pump as the valve would not work; meanwhile the nozzle remained in the tank. The attendant, instead of shutting off the gasoline, pulled the hose and valve out of appellee's hands, while gasoline

was still being forced through under a twelve-pound pressure, or ten gallons per minute. When it was jerked back gasoline was thrown over appellee's clothing, the inside of the cab, against the windshield, over the hood of the truck and on the acetylene lights. Immediately a fire started, rapidly communicating through the windshield into the cab, setting fire to plaintiff's clothing and to the gasoline vapor from the tank. The cab soon became a seething mass of flames. Plaintiff, in attempting to make his way out of the door on the right side, was prevented because of the flames and intense heat. He then attempted to get out by the window of the door on the left side; when partly through the window his strength failed and he was unable to help himself further; bystanders came to the rescue, pulling him from the car. Fire extinguishers were used to put out the flames on his clothing, after which he was taken to a hospital. These facts the jury could and did find from plaintiff's testimony.

The statement of claim contained a number of charges of negligence: that defendant did not use the necessary and proper protections in handling and selling a dangerous agency; nor did it use, maintain, repair and inspect proper and safe valves and pumps; nor did it furnish a duly qualified, competent and safe person in charge of the station; and that it failed to shut off the flow of gasoline when requested, carelessly pulling the hose from appellee's hands. From our study of the record, each charge was sustained.

Negligence is absence or want of care under the circumstances. A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk. No absolute standard can be fixed by law, but every reasonable precaution suggested by experience and the known danger ought to be taken: Koelsch v. The Philadelphia Company, 152 Pa. 355, 362. See Shirey v. Consumers' Gas Co., 215 Pa. 399, as to the application of the rule,

and Gudfelder v. Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co., 207 Pa. 629, as applying to the facts in the present case

When a person invites another to his place of business, he assumes toward the invitee certain duties, and if he negligently permits a danger of any kind to exist, which results in injury to the person invited, without negligence on the latter's part, the invitor is answerable for the consequence of such injury. Woodruff v. Painter & Eldridge, 150 Pa. 91, 95.

Appellant assails the statement that when the hose was pulled away gasoline fell over plaintiff, the windshield at his back, the hood and the acetylene lamps, thus starting the fire. It is urged that, as appellee was standing with his back to these things, it was impossible for him to see what was going on, and as his statement was in direct conflict with physical laws, or matters of such general knowledge, and as he was the only one to sustain plaintiff's case, we should consider these facts and reject this evidence; the case must therefore fall.

We do not agree with this contention or conclusion. Other circumstances appear in evidence from which causal connection may be fairly inferred. Appellee testified the gasoline was still flowing from the hose when jerked from him; it was under pressure, and the natural, probable and direct result of the act would be the discharge of gasoline from the nozzle, throwing it over the objects within reach, touching those spots described by appellee. To further sustain this and appellee's testimony, it appears the end of the hose was on fire when held by the attendant after being jerked from appellee's hands. The testimony of defendant's attendant supports to some extent what appellee contends for, as does the testimony of the witness Parker, present at the time of the accident. In further support, fire was shown to be on top of the hood. But we are not convinced appellee was necessarily prevented from seeing what occurred. He does not describe himself as standing

squarely in front of the tank, but at an angle; when the hose was jerked from his hands it required but the fraction of a second, the twinkling of an eye, to instantly turn his head, and see what was going on. The evidence was proper, its credibility entirely for the jury; it is not such as would warrant a court in summarily dismissing the case.

Appellant contends that one of two causes existed to which the injury might be attributed, and for which defendant would not be responsible. Gasoline is a volatile and dangerous substance; while filling the tank, inflammable vapor was being thrown off; all the time the acetylene lamps were burning. There was, therefore a possibility, defendant asserts, that the vapor came in contact with the lamps through the partly opened windshield, causing the fire, and for this defendant was not legally liable. Aside from the evidence, by appellee and Parker, of direct contact with the stream of gasoline, other circumstances refute appellant's theory

It appears about three cubic feet of gasoline vapor was created during the time the tank was being filled. The cab was four by four and one-half by five feet, having a content of ninety cubic feet. Gasoline vapor is about three times as heavy as air. Plaintiff's experts deny that vapor in this space, without other producing cause, could rise above the air from the bottom of the cab to a point at the opening in the windshield, flow out this opening and directly descend two feet to the acetylene lamps, there to be ignited. From this opening in the windshield to the bottom of the cab there was a partition separating the cab from the lights outside. It is true, if there is any other cause to which with equal fairness the injury may be attributed (and a jury will not be permitted to guess which condition caused the injury), an inference of negligence will not be permitted to be drawn against defendant (East End Oil Co. v. Pennsylvania Torpedo Co., 190 Pa. 350, 353; Ott v. Boggs, 219 Pa. 614; McAvoy v. Kromer Bros., 277 Pa. 196), but

here we have direct evidence of the origin of the fire. As said in Propert v. Flanagan, 277 Pa. 145, 148, where direct evidence as to the fire's commencement is present, the causal connection through defendant's negligence is established, and if other independent causes did exist they would not relieve of liability.

The evidence in relation to the valve, its condition, repair and the driver's knowledge of it, was sufficient to go to the jury. The owner was bound to see that the valve would work under ordinary circumstances, and, under plaintiff's testimony, could be kept in repair for a limited period of time only. The washers or packing was of a material that easily deteriorated when brought in contact with gasoline. It was testified that inspection should be made once a week, if not once a day, but that no inspection was made of this valve at any time. This particular type of valve was not only not in general use, but was scarcely ever used. The duty to inspect had been neglected: Baker v. Allegheny Valley R. R. Co., 95 Pa. 211; Bier v. Standard Mfg. Co., 130 Pa. 446; McGuigan v. Beatty, 186 Pa. 329; Eldridge v. Fell Mfg. Co., 240 Pa. 321.

Was appellee guilty of contributory negligence? He knew the dangerous character of the substance he was using, and that when taken into the cab it was close to the acetylene lights outside of the cab, which were permitted to burn. The valve was under his control; when it refused to work, as a prudent man he should have thrown it to the pavement, and his failure to do so was his own neglect; so argues appellant.

Plaintiff assumed only the usual and ordinary risks, and not the risks which became extraordinary through negligence. It does not lie in the mouth of one at fault to complain of another's lack of care when the care in question is made necessary only because of the former's wrongful act, and would not be needed under ordinary circumstances. Plaintiff cannot be charged with negligence simply because he failed to anticipate negligence

on the part of another which resulted in injury: Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449; Wagner v. P. R. T. Co., 252 Pa. 354. Plaintiff had the right to assume and act on the assumption that defendant would provide proper and safe appliances with which to work, and careful servants. Where defendant fails in the performance of these duties, and plaintiff, suddenly placed in a position of peril (Razzis v. P. & R. Ry. Co., 273 Pa. 550), acts carelessly or mistakenly, the defendant cannot be heard to complain, for it was his misdeed that caused plaintiff to act as he did.

Mitchell v. Stewart, 187 Pa. 217, does not control. Plaintiffs in that and the instant case knew of the dangerous character of the agency with which they were dealing, and, in both, lamps were used, but the relative positions of the lamps when the accidents occurred were quite different.

Here we have a man who had never used this type of valve, using it as directed by defendant's employee; the valve refused to work and the defendant's servant, on being instructed to shut off the gas at the pump, suddenly, without warning, pulled the hose out of plaintiff's hands, causing the accident. The mere fact that lighted acetylene lamps were on the outside would not cause appellee's acts to be negligent. There was no testimony to suggest any inherent danger in the acetylene lights as there placed, separated from the tank-filling operation by a partition, the lights being about six feet from the tank. He could not anticipate defendant's valve would not work, and its servant would be careless in using the hose.

It was in evidence, unobjected to, that similar trucks were filled in the same manner while their lights were burning. Defendant has never regarded lights burning on the outside as dangerous. If it did, undoubtedly it would be the first to adopt some regulations to control the menace. No one knows better than this company whether this condition was dangerous The fact that the

company did not require lights to be put out is one of the strongest of the circumstances that they were not inherently dangerous. This is quite a different case from a man walking with a lighted lamp into a cellar which he knows is filled with the gas, as in Mitchell v. Stewart, supra.

In the assignment of error directed to the evidence of Parker, it appears the answer had been given before the objection was made. There was no motion to strike the evidence out, and two other witnesses had testified in substance to the custom of filling cars while lights were burning. This comes within the rule in Pyle v. Finnessy, 275 Pa. 54.

Objection is made to the admission of the Carlisle Tables. It must be conceded by those conversant with the trial of cases that, in accident cases, great abuse has been made of these tables when combined with tables showing present worth. They were first admitted in Steinbrunner v. Pittsburgh, etc., Ry. Co., 146 Pa. 504, 515, and it was early pointed out, the Carlisle tables might "prove a dangerous element in the trial of cases." We have cautioned trial judges time and again as to the manner in which the tables should be used, and to be very particular to instruct the juries as to their effect. While these admonitions do not seem to have brought relief in the present record, we can do nothing more than repeat our former injunctions to trial judges.

The final question for consideration is the amount of the verdict. There were two trials in the court below; the first jury returned $27,500 and the second $35,000, reduced by the court below to $30,000, on which judgment was entered.

The case presents some unusual features relative to the conflicting medical testimony; possibly six physicians on each side had diametrically opposite views as to the permanency of plaintiff's injuries. The jury could find from the evidence that, after appellee was taken to the hospital, his throat and mouth were so badly burned

the latter had to be packed with cotton for days to supply medication to the injured parts, and the burning ran into the chest. The flesh was burned off the right hand; it was entirely crippled, the fingers now being rigid. His left hand was burned raw, and the face, forehead, chin and neck were severely burned.

For a time speech was affected. He was confined to his bed, with a trained nurse in constant attendance for eight weeks or more, and has since been under the constant care of a physician, being treated weekly. As a result of the burning, his hearing is also affected, and the pains in his throat, chest, stomach and across his back still continue. It will be necessary to treat the effect of his injuries for many years, while some of the conditions are incurable. He has atrophy, chronic inflammation of the membranes of the nose, and interference with the ventilation of the ear.

Plaintiff's witnesses agree that he is permanently disabled, and all the physicians admit he suffered a serious mishap. The evidence of the defendant's medical experts as to permanent disability is opposed in all essential parts to plaintiff's. They deny he is permanently injured, and insist a few months' treatment and rest at the seashore will improve the condition immeasurably.

At the time of the trial plaintiff was earning $52.50 per week, with $4 incidentals. This amount must not be taken as the exclusive guide in estimating loss of earning power, and it must be understood, as one grows older, after a certain age his ability decreases. He had lost in actual wages in the neighborhood of $6,000, his bills for medical attention amounted to approximately $1,100, making an actual loss of approximately $7,000. There is no doubt his continued medical treatment as described by plaintiff's physicians will run up to a large sum, considering plaintiff's station in life, and we agree the figure will be considerable.

Appellant suggests an award of $18,000 would have been sufficient. In this, however, it does not allow for

Opinion of the Court—Dissenting Opinion.    [282 Pa.

all the loss of earnings up to the date of trial; nor is a fair amount allowed for future medical attention. Its basis for loss of earnings is made up from figures we cannot discover in the evidence, and no allowance is made for the horrible pain and suffering which the man must have undergone.

The court has no intention to depart from the principles announced in Gail v. Phila., 273 Pa. 275, or Smith v. Times Publishing Co., 178 Pa. 481. But there is a zone of uncertainty as to loss of earning power, and compensation for pain and suffering, which is exclusively within the jury's province to determine. The case is not so clear as to cause us to invoke the rule of the two cases just announced. We are of the opinion that the record presents no reversible error; the questions therein presented were clearly for the jury, whose judgment must be accepted as final in the determination of the case.

The judgment of the court below is affirmed.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

The majority of the court has concluded that the judgment recovered by plaintiff is not such an excessive admeasurement of the compensation to which he is entitled as to warrant our interference with it. I have reached the opposite conclusion and therefore express my dissent.