**Paul MacNUTT and Mary Ann MacNutt, Appellants**

v.

**TEMPLE UNIVERSITY HOSPITAL, INC., Satoshi Furukawa, M.D., and Temple University of the Commonwealth System of Higher Education, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued May 8, 2007.

Filed Sept. 7, 2007.

Laurence M. Kelly, Montrose, for appellants.

Ira W. Bushman, Philadelphia, for appellees.

BEFORE: JOYCE,* STEVENS, LALLY–GREEN, TODD, KLEIN, BENDER, GANTMAN, McCAFFERY and PANELLA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, Paul MacNutt and Mary Ann MacNutt, appeal from the judgment entered in the Philadelphia County Court of Common Pleas, in favor of Appellees, Temple University Hospital, Inc., and Satoshi Furukawa, M.D.,[1] in Appellants' medical malpractice action, following the denial of Appellants' post-trial motion for a new trial. Specifically, Appellants ask us to determine whether the trial court erred in precluding Appellants from presenting their medical malpractice case at trial based on a *res ipsa loquitur* theory of negligence. Appellants also challenge the trial court's denial of their request for a jury instruction on the doctrine of *res ipsa loquitur*. We hold the court properly precluded Appellants from presenting their case at trial under the *res ipsa loquitur* doctrine. We also hold the court correctly denied Appellants' request for a *res ipsa loquitur* jury instruction, because the evidence did not support that instruction. Accordingly, we affirm the court's decision to deny Appellants a new trial.

¶ 2 The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

[Appellant], Paul MacNutt, brought this action against [Appellees] based upon allegations of medical malpractice. [Appellant] sought medical treatment for Thoracic Outlet Syndrome, a condition that rendered his arms cold and paralyzed on an intermittent basis. [Appellee], Satoshi Furukawa, M.D., performed two surgeries to correct [Appellant's] condition. [Appellant] alleged that during the second of these two surgeries in May of 2001, he suffered a chemical burn to the left side of his shoulder. He alleged that this chemical burn caused, and continues to cause, him severe pain to the extent that he is dependant on drugs to manage this pain. He further alleged that the burn [led] to the loss of life's pleasures and decreased his earning capacity. [Appellant], Mary Ann MacNutt, made a claim for loss of consortium.

It was [Appellants'] intention to proceed to trial based upon a standard theory of negligence, as well as a theory of *res ipsa loquitur*. [Appellants] supported their standard theory of negligence by offering the expert testimony of Dr. Lynn W. Whelchel. Dr. Whelchel opined that [Appellant] suffered a chemical burn as a result of lying in an unconscious state for an extended period of time in a surgical preparatory cleansing solution composed of Betadine and alcohol that pooled under his body. [Appellants] intended to support their *res ipsa loquitur* theory by having Dr. Whelchel state that a burn of this nature would not ordinarily occur in the absence of negligence.

[Appellees] argued that [Appellant] had not suffered a chemical burn during the

---

* Judge JOYCE did not participate in the consideration or decision of this case.

1. The Court granted summary judgment in favor of co-defendant Temple University of the Commonwealth System of Higher Education, Inc., which is not a party to this appeal.

surgery at issue. [Appellees] offered the expert testimony of Dr. Stuart R. Lessin, who diagnosed [Appellant] as suffering from an outbreak of shingles or herpes zoster. He stated that these outbreaks can often cause scarring and permanent pain. He also stated that these conditions can often be misdiagnosed. [Appellees] further attacked the credibility of Dr. Whelchel by pointing out the lack of factual basis for his opinion that Betadine pooled under [Appellant] during surgery. [Appellees] also argued that Betadine could not cause a third-degree burn of the nature [allegedly] suffered by [Appellant].

At the close of [Appellants'] case-in-chief, this court found that [Appellants] had produced adequate evidence to support a cause of action based on a standard theory of negligence without relying on a theory of *res ipsa loquitur*. This court precluded [Appellants] from proceeding on a theory of *res ipsa loquitur*.

Following a Defense verdict, [Appellants] filed post-trial motions alleging that they were prejudiced by this court's ruling. [Appellants] raised three grounds for a new trial as follows:

1. The [c]ourt erred when, at the close of [Appellants'] case-in-chief, it precluded them from proceeding on a theory of *res ipsa loquitur*.

2. The [c]ourt erred when, at the close of [Appellants'] case-in-chief, it did not hold oral argument prior to ruling that [Appellants] could not proceed on a *res ipsa loquitur* theory of negligence.

3. The [c]ourt erred when it declined to instruct the jury in accordance with [Appellants'] proposed points for charge on *res ipsa loquitur*.

(Trial Court Opinion, filed June 24, 2005, at 1–2) (internal citations omitted).

¶ 3 The trial court denied Appellants' post-trial motions on January 12, 2005. Appellants timely filed their notice of appeal on January 26, 2005. On October 10, 2006, a panel of this Court affirmed, with a dissent. On October 24, 2006, Appellants requested *en banc* reargument, which this Court granted on December 22, 2006.

¶ 4 On appeal, Appellants raise the following issues for our review:

DID THE COURT OF COMMON PLEAS ERR IN REFUSING TO ALLOW [APPELLANTS] TO SEEK TO PROVE THE NEGLIGENCE OF [APPELLEES] THROUGH THE DOCTRINE OF *RES IPSA LOQUITUR?*

DID THE COURT OF COMMON PLEAS ERR IN REFUSING TO INSTRUCT THE JURY THAT THEY COULD FIND [APPELLEES] TO HAVE BEEN NEGLIGENT UNDER THE DOCTRINE OF *RES IPSA LOQUITUR?*

DID THE COURT OF COMMON PLEAS ERR IN ALLOWING THE JURY TO CONSIDER ONLY THE INTERROGATORY, "DID [APPELLANT] ... SUSTAIN A BURN TO HIS LEFT SCAPULA AREA OF HIS BACK AS A RESULT OF LYING IN A POOL OF BETADINE AT THE TIME OF THE SURGERY ... ?" WITHOUT ALSO PROVIDING THE JURY WITH INTERROGATORIES THAT WOULD HAVE ALLOWED THE JURY TO DETERMINE THAT ALL OR SOME OF [APPELLEES] WERE NEGLIGENT UNDER THE DOCTRINE OF *RES IPSA LOQUITUR?*

(Appellants' Brief at 4).

¶ 5 When presented with an appeal from the denial of a motion for a new trial, "absent a clear abuse of discretion by the trial court, appellate courts must not

interfere with the trial court's authority to grant or deny a new trial." *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 466, 756 A.2d 1116, 1121–22 (2000).

In *Harman*, the Court noted that the trial court must follow a two-step process in responding to a request for a new trial. The trial court must determine whether a factual, legal or discretionary mistake was made at trial. If the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. Moreover, the Court noted[:] "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake."

The Court then set forth an additional two-step analysis for appellate review of a trial court's determination to grant or deny [9] a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was, or was not, made. In so doing, the Court noted that the appellate court must apply the appropriate standard of review. If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. If the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion. The Court reiterated that a trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

---

9. The Court specifically held that a review of a denial of a new trial requires the

same analysis as a review of a grant of a new trial.

■■■ If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis. If the appellate court discerns that a mistake was made at trial, however, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial.

*Ettinger v. Triangle–Pacific Corp.*, 799 A.2d 95, 106 (Pa.Super.2002), *appeal denied*, 572 Pa. 742, 815 A.2d 1042 (2003) (internal citations omitted). We will overturn the decision only where the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Colville v. Crown Equipment Corp.*, 809 A.2d 916, 926 (Pa.Super.2002). We view the evidence in the light most favorable to the verdict winner to determine "whether a new trial would produce a different verdict." *Gunn v. Grossman*, 748 A.2d 1235, 1239 (Pa.Super.2000), *appeal denied*, 564 Pa. 711, 764 A.2d 1070 (2000). "Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed." *Id.* Further, a new trial is granted only where the verdict is so contrary to the evidence as to shock one's sense of justice, not where the evidence is conflicting or where the court might have reached a different conclusion on the same facts. *Andrews v. Jackson*, 800 A.2d 959, 962 (Pa.Super.2002), *appeal denied*, 572 Pa. 694, 813 A.2d 835 (2002).

¶ 6 For ease of disposition, we consider Appellants' first and second issues together. In those issues, Appellants argue the trial court should have allowed them to proceed at trial with their theory of negligence based on direct evidence and, alter-

natively, on an inference of negligence, where the burn Appellant suffered would not have occurred in the absence of negligence. Appellants rely on *Hollywood Shop, Inc. v. Pennsylvania Gas and Water Co.*, 270 Pa.Super. 245, 411 A.2d 509 (1979) and *D'Ardenne by D'Ardenne v. Strawbridge & Clothier, Inc.*, 712 A.2d 318 (Pa.Super.1998), *appeal denied*, 557 Pa. 647, 734 A.2d 394 (1998) to support their contention that Pennsylvania law allows plaintiffs to establish varying theories of negligence by means of direct evidence of the negligent act and an inference of negligence under the doctrine of *res ipsa loquitur*.

¶ 7 Specifically, Appellants contend their expert witness gave opinion evidence to support both an inference of negligence and his theory that Appellant suffered a chemical burn resulting from the pooling of Betadine disinfectant during the surgery. While Appellants concede their expert's testimony regarding the pooling of Betadine could be characterized as having provided a full theory of negligence, Appellants insist their expert offered this testimony merely as an opinion, not as direct evidence of Appellees' negligence.

¶ 8 As a result of the court's ruling, Appellants argue they were relegated to resting their case entirely on the expert's opinion that the Betadine pooling during surgery caused Appellant's burn, which Appellees vigorously attacked and the jury subsequently rejected. Appellants suggest Appellees would have suffered no prejudice had the jury been given the option to infer negligence under the doctrine of *res ipsa loquitur*, because Appellees knew in advance of trial that Appellants intended to proceed under that doctrine.

¶ 9 Appellants further argue this Court's panel majority erroneously relied on the plurality decision of *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 573 Pa. 245, 824 A.2d

1140 (2003) which contained an additional condition to be satisfied for the application of *res ipsa loquitur*. Instead, Appellants direct our attention to the more recent opinion of the Pennsylvania Supreme Court in *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061 (2006), to support their proposition that the presence of direct evidence of negligence does not preclude a plaintiff from proceeding under the doctrine of *res ipsa loquitur*. Appellants observe the Pennsylvania Supreme Court decided *Quinby* eight days after the publication of this Court's panel decision, and claim this Court would have decided the appeal differently if it had had the benefit of *Quinby* at the time of its original panel decision. Appellants insist *Quinby* is the most recent decision on medical malpractice and *res ipsa loquitur*; therefore, it is controlling. Appellants maintain the trial court erred when it determined Appellants' expert witness presented direct evidence of negligence, and precluded them from proceeding under the doctrine of *res ipsa loquitur*. Thus, Appellants conclude they are entitled to a new trial. We disagree.

¶ 10 The doctrine of *res ipsa loquitur* is a rule of circumstantial evidence which allows plaintiffs, without direct evidence of the elements of negligence, to present their case to the jury based on an inference of negligence. *D'Ardenne, supra*. Our Supreme Court has adopted the evidentiary rule of *res ipsa loquitur* as articulated in the Restatement (Second) of Torts. *Id.* The Restatement (Second) of Torts § 328D provides:

§ 328D. *Res Ipsa Loquitur*

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts § 328D. Additionally, Comment (o) to Section 328D explains:

The inference arising from a *res ipsa loquitur* case may, however, be destroyed by sufficiently conclusive evidence that it is not in reality a *res ipsa loquitur* case. If the defendant produces evidence which is so conclusive as to leave no doubt that the event was caused by some outside agency for which he was not responsible, or that it was of a kind which commonly occurs without negligence on the part of anyone and could not be avoided by the exercise of all reasonable care, he may be entitled to a directed verdict.

*Id.* Comment (o).

¶ 11 Before a plaintiff can invoke the doctrine of *res ipsa loquitur,* all three of the elements of Section 328D(1) **must** be established; only then does the injurious event give rise to an inference of negligence. *Leone v. Thomas,* 428 Pa.Super. 217, 630 A.2d 900 (1993), *appeal denied,* 537 Pa. 664, 644 A.2d 1201 (1994) (citing *Smith v. City of Chester,* 357 Pa.Super. 24, 515 A.2d 303 (1986), *appeal dismissed as improvidently granted,* 517 Pa. 362, 537 A.2d 812 (1988)). "After all three elements have been established, if reasonable persons may reach different conclusion[s] regarding the negligence of the defendant, then it is for the jury to determine if the inference of negligence should be drawn." *Leone, supra* at 901; Restatement (Second) of Torts § 328D(3). Significantly, "if there is **any other cause** to which with equal fairness the injury may be attributed (and a jury will not be permitted to guess which condition caused the injury), an inference of negligence will not be permitted to be drawn against defendant." *Fredericks v. Atlantic Refining Co.,* 282 Pa. 8, 15, 127 A. 615, 617 (1925) (citing *East End Oil Co. v. Pennsylvania Torpedo Co.,* 190 Pa. 350, 42 A. 707 (1899)) (emphasis added).

¶ 12 Appellants' blanket reliance on *Quinby* necessitates a brief discussion of that case. In *Quinby,* decedent was a quadriplegic patient who went to his doctor's family practice for a minor operative procedure. Following the procedure, the doctor and nurse left decedent unattended on the table in the exam room. At some point while unattended the decedent fell off the examination table and suffered various injuries, which ultimately led to his death. Decedent's wife as the plaintiff sued the doctor and nurse alleging defendants negligently provided medical care for decedent by failing to properly position and restrain him on the examination table, failing to properly monitor him after the procedure, the doctor's failure to properly supervise the nurse, and failing to ensure the safety of patients left on examination tables. The plaintiff also brought counts against defendants for negligent infliction of emotional distress, loss of consortium, failure to obtain informed consent, and wrongful death.

¶ 13 At the jury trial, the plaintiff's expert testified that the defendants' conduct fell below the requisite standard of care. Additionally, the expert opined that such

an event does not ordinarily occur in the absence of negligence. The plaintiff's expert concluded defendants had failed to provide a safe environment for decedent the entire time he was in the office. The defendants' expert, however, opined that leaving a quadriplegic in the center of the examination table was acceptable, especially given the decedent's twenty-five year history with the defendants' practice without a fall. At the close of the entire case, the plaintiff requested the court to instruct the jury on *res ipsa loquitur*. The trial court refused to give the instruction because it did not find the plaintiff had proved the decedent's injury was the kind that does not usually occur in the absence of negligence. The jury returned a verdict in favor of the defendants, and the trial court denied the plaintiff's post-trial motion for JNOV.

¶ 14 On appeal, this Court reviewed the plaintiff's claim of error regarding the trial court's refusal to charge the jury on *res ipsa loquitur*. This Court concluded that a quadriplegic's fall from an examination table is the type of event that does not usually occur in the absence of negligence and that other causes for the fall were eliminated. Accordingly, this Court reversed the decision of the trial court, granted JNOV in favor of the plaintiff on liability, and remanded the case for a new trial on damages.

¶ 15 The Pennsylvania Supreme Court granted allowance of appeal to determine whether the plaintiff was entitled to a *res ipsa loquitur* jury instruction and whether JNOV for the plaintiff was warranted on liability. The Court applied the Restatement principles and under the first factor, the Court determined:

> Under these facts, there can be no question that when Defendants placed Decedent on the examination table, they had to do so in a manner insuring that he

could not fall. Regardless of which version of the event is believed, **there is no factual issue or possible dispute** that Decedent's fall resulted from something other than Defendants' negligence. Simply put, in the absence of negligence, a quadriplegic such as Decedent could not fall off an examination table. Therefore, we find that the evidence satisfies the first element of § 328D.

*Quinby, supra* at 202, 907 A.2d at 1072 (emphasis added). Under the second element, the Court stated: "[T]he critical inquiry as to whether this subsection of § 328D is satisfied is whether a particular defendant is the responsible cause of the injury." *Id.* (citing *Jones v. Harrisburg Polyclinic Hospital*, 496 Pa. 465, 437 A.2d 1134 (1981)). The Court held:

> It is undisputed that there is no explanation for Decedent's fall beyond Defendants' negligence. No one else entered the examination room; the table did not break; nothing fell on or near it; there was no seismic disturbance in the area, etc. Given Decedent's full-body paralysis, all agree that there was no way he could have been responsible for his fall. Indeed, his condition made it impossible for him to even understand how or why he fell. Thus, [the plaintiff] has established that the fall is not the type of event that occurs in the absence of negligence, and that there is no explanation other than Defendants' negligence for the fall. Accordingly, § 328D's three elements were met herein, and the Superior Court was correct in ruling that the trial court should have charged the jury on the doctrine of *res ipsa loquitur*.

*Id.* at 202, 907 A.2d at 1073. The third element of the Restatement (whether the indicated negligence was within the scope of the defendant's duty to the plaintiff) was essentially undisputed. Accordingly, the Supreme Court affirmed this Court's deci-

sion as to the necessity of a res ipsa loquitur jury instruction. *Id.* The Court also agreed that JNOV and a new trial on damages was the proper relief for the plaintiff. *Id.* at 209, 907 A.2d at 1077.

¶ 16 Instantly, the trial court discussed the proceedings leading up to Appellants' expert's testimony as follows:

Prior to Dr. Whelchel testifying, [Appellees] informed this [c]ourt that they were reserving the right to motion to strike Dr. Whelchel's testimony based upon similar grounds raised in their *Frye*[2] Motion. This [c]ourt inquired into whether [Appellants] still intended to proceed with the Betadine burn theory. [Appellants]' attorney then responded by stating that he intended to proceed solely on a *res ipsa loquitur* theory and had no intention of offering the expert opinion that the pooling of Betadine cleansing solution caused the burn to [Appellant]'s left shoulder. In fact, [Appellants'] attorney stated that the only way that this theory would be introduced would be if [Appellees] cross-examined their expert on the theory of Betadine pooling. Based on [Appellants'] counsel's representation, this [c]ourt did not pursue any further discussion on the factual basis for Dr. Whelchel's opinion or [Appellees'] *Frye* Motion.

The parties then discussed how [Appellants] would present their case to the jury under a *res ipsa loquitur* theory. The discussion spanned roughly twenty six (26) pages in the notes of testimony, and this [c]ourt clearly explained that it expected [Appellants] to present evidence showing that [Appellees] were totally in control of the operating sphere and that although they did not know what caused the chemical burn, it could not occur in the absence of negligence.

The notes of testimony covering this discussion are devoid of any stated intention by [Appellants] to withdraw their stipulation not to introduce the Betadine burn theory.

It was therefore astonishing that immediately after [Appellants'] expert took the witness stand, [Appellants'] counsel elicited an expert opinion to a reasonable degree of medical certainty that the chemical burn on [Appellant]'s left shoulder was caused by the pooling of Betadine cleansing solution during surgery. Excerpts from his direct testimony are as follows:

Q: In the course of your education, training, and experience, together with your examination of the records in this case and the evidence that we have presented, do you have an opinion within a reasonable degree of medical certainty as to whether or not this burn is the type of injury that does not occur in the absence of negligence?

A: Yes, I have an opinion.

Q: What is that opinion?

A: My opinion is that the presence of the burn in this location indicates to me in my opinion that the surgical preparation, the antiseptic preparation, or surgical prep of the skin was improperly carried out.

Q: Tell us on what basis you have the opinion that this burn was a chemical burn.

A: It looks like one based on my experience. He had the conditions that can predispose to this; i.e., he had it prepped with Betadine and alcohol. He was anesthetized for two hours and about 50, 55 minutes. And number three, he was in a dependant

2. *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

position where the fluid which was used on the upper chest closest to the operating theater light ran down the front and back of his torso and pooled at the bottom between the patient's body and the backpack or the apparatus on the operation room table.

Q: Doctor, can you describe the manner in which this chemical burn was sustained at the time of surgery?

A: Three factors. Number one, the material, the liquid, would stay in contact with the skin for a long period of time and cause irritation of the skin. Number two, the area in contact with the liquid being subjected to a higher than normal pressure because it's not normal to lie on your side like that. And number three, the patient can't feel and then move to relieve the pressure or the discomfort because he is anesthetized.

(Trial Court Opinion at 6–7) (internal citations omitted).

¶ 17 Applying the Restatement principles to Appellants' case, we first observe the parties' experts intensely disputed the exact nature of Appellant's injury. Dr. Whelchel opined Appellant had sustained a chemical burn resulting from lying in a pool of Betadine solution for an extended period of time. (N.T. Trial, 10/4/04, at 362–64). Appellees' expert, Dr. Lessin, opined Appellant had suffered an outbreak of herpes zoster or shingles. (*Id.* at 879–83). Because the nature of the injury was itself in dispute, the court correctly determined the injury could have occurred without negligence. This controversial testimony presented an issue of fact regarding the nature of Appellant's injury as well as **where** the event actually took place. Therefore, Appellants failed to

establish the first element of *res ipsa loquitur.* *See* Restatement (Second) of Torts § 328D(1)(a).

¶ 18 Likewise, the parties' experts hotly disputed whether other responsible causes for Appellant's injury could be sufficiently eliminated. For the defense, Dr. Lessin addressed the dermatological patterns seen in photographs of Appellant's injury. Dr. Lessin testified as follows:

Q: Doctor, some of the pictures you showed us, they appear to have other markings or other descriptions besides just redness. Could you explain what those markings are and how a physician might look at those?

A: Basically, when herpes zoster erupts, it produces a blister. The blisters tend to be grouped or clustered together, an associated degree of redness of the skin and that can vary. What doesn't vary, again, is the distribution of the blistering and the redness. That's the diagnostic hallmark. So you can see blisters. And the blisters can become [purulent] and the blisters can become crusted. The blisters can become ulcerated. There's a variety of different skin lesions you see within this distribution mostly as a result of time. But acutely it's a blistering red eruption. These photographs depict different time points during [Appellant's] herpes zoster.

Q: Dr. Lessin, is there a differential diagnosis that plays a part in coming to an impression of herpes zoster?

A: Virtually, no. The dermatomal distribution [3] is so diagnostic, it's hard to imagine another entity causing that type of distribution.

---

3. A dermatomal distribution suggests the appearance of skin blisters or lesions following the pattern of sensory fibers of a nerve root.

(N.T. at 879–80). Dr. Lessin further responded to Dr. Whelchel's theory of negligence as follows:

Q: Can [Dr. Whelchel's] type of diagnosis or impression be made in looking at this photograph?

A: I do not think so.

Q: Why is that?

A: Because it doesn't look like a burn caused by Betadine. Looks like herpes shingles. Herpes zoster or shingles. And that is because Betadine, which is a topical antiseptic, if left on the skin to a point where it irritates the skin, it will result in very defined boarders in which the solution touches the skin. Sort of a high water mark where flood waters touch land or building. You will see a pattern of the pooling of any allergic or irritant on the skin. You don't see that. You see a dermatome distribution.

(*Id.* at 881). Appellees' expert, Dr. Noble, also opined the photographs of Appellant's injury were inconsistent with Dr. Whelchel's theory of Betadine pooling and burn. (*Id.* at 933).

¶ 19 Appellees' experts produced sufficiently conclusive evidence that Appellant's injury was a skin eruption of herpes zoster and not a Betadine burn. Thus, Appellants were unable to eliminate other possible causes of Appellant's injury. *See Fredericks, supra;* Restatement (Second) of Torts § 328D(1)(b). The difference of opinion on the nature of Appellant's injury as well as the competent evidence of another possible cause for the injury also created a factual dispute regarding whether Appellant's injury was outside the scope of Appellees' duty to Appellant. *See* Restatement (Second) of Torts § 328D(1)(c). Therefore, Appellants did not satisfy the necessary factors under the Restatement to proceed under the doctrine of *res ipsa loquitur. See Leone, supra.* Accordingly, we hold this case was not in reality a *res ipsa loquitur* case, and the court's decision to deny Appellants a new trial on this ground must stand. *See Ettinger, supra.*

 ¶ 20 With respect to Appellant's claim that the trial court should have given a *res ipsa loquitur* instruction to the jury, Pennsylvania law makes clear that the court is bound to charge the jury "only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on inapplicable legal issues." *Angelo v. Diamontoni,* 871 A.2d 1276, 1279 (Pa.Super.2005), *appeal denied,* 585 Pa. 694, 889 A.2d 87 (2005) (quoting *Cruz v. Northeastern Hosp.,* 801 A.2d 602 (Pa.Super.2002)). "Consequently, where the record [evidence fails] to satisfy the elements of a particular legal doctrine, the court may not discuss that doctrine in its charge." *Id.* Challenges to a court's jury instructions are subject to an abuse of discretion standard of review. *Butler v. Kiwi, S.A.,* 412 Pa.Super. 591, 604 A.2d 270, 272 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992). "The court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure." *Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 832 (Pa.Super.2000).

¶ 21 Instantly, we have already determined the trial court properly precluded Appellants from utilizing the doctrine of *res ipsa loquitur* to create the inference of Appellees' negligence. The evidence did not support the use of the *res ipsa loquitur* doctrine; therefore, the trial court correctly refused to instruct the jury on that legal theory. *See Angelo, supra.* Thus, we will give this claim no additional attention.

 ¶ 22 Due to our disposition of issues one and two, we will only briefly

address Appellants' third issue as presented in the statement of questions raised on appeal. Appellants suggest the court should have given the jury a special interrogatory that would have allowed the jury to find all or some of Appellees were negligent under the doctrine of *res ipsa loquitur*. In the body of Appellants' brief, however, we can locate only a glancing mention of and no direct challenge to the jury interrogatories.

¶ 23 Pennsylvania law makes clear to preserve an issue for appellate review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions. *Takes v. Metropolitan Edison Co.*, 548 Pa. 92, 695 A.2d 397 (1997); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Moreover, Appellants have the burden of developing their claims on appeal; arguments that are not appropriately developed are waived. *Connor v. Crozer Keystone Health System*, 832 A.2d 1112, 1118 (Pa.Super.2003).

¶ 24 Instantly, Appellants made two objections regarding the jury interrogatories at trial; however, neither objection pertained to Appellants' third issue on appeal. (*See* N.T. at 1061–62). Appellants also failed to raise this specific issue in their post-trial motions. (*See* [Appellants'] Motion for Post-trial Relief, filed October 19, 2004, at 1–5). *See Takes, supra.* Finally, Appellants failed to provide us with cogent argument on this specific claim on appeal. *See Connor, supra.* For all of these reasons, we deem Appellants' third issue waived.

¶ 25 Based upon the foregoing, we hold the court properly precluded Appellants from presenting their medical malpractice case at trial based on a *res ipsa loquitur* theory of negligence. We also hold the court correctly denied Appellants' request for a *res ipsa loquitur* jury instruction, because the evidence did not support such an instruction. Accordingly we affirm the court's decision to deny Appellants a new trial.

¶ 26 Judgment affirmed.