J-S08035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LESLIE A. HICKMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DR. ROBYN M. SHOR-CONROY AND CONROY & ASSOCIATES | |
| Appellee | No. 2336 EDA 2014 |

Appeal from the Order Entered July 15, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2013-000787

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED JANUARY 23, 2015**

Leslie Hickman appeals from an order granting summary judgment to Dr. Robyn Shor-Conroy and Conroy & Associates (collectively "Appellees") in this medical malpractice action.  For the reasons articulated below, we affirm.

The record reflects that in April 2009, Hickman began treating with her primary care physician, Dr. Robyn Shor-Conroy, at Conroy & Associates. During regular wellness visits, Hickman disclosed her medical and surgical history, which included gastric bypass surgery (also known as bariatric surgery) in December 2009.  Amended Complaint, ¶¶ 8-10.

On January 25, 2011, Hickman complained of left elbow pain, and Dr. Shor-Conroy prescribed Medrol, an adrenocortical steroid, to relieve

1

inflammation and pain.  Hickman obtained Medrol and took all tablets as prescribed.  Amended Complaint, ¶¶ 8-12.

At 2:00 a.m. on February 6, 2011, while in New Jersey, Hickman got out of bed to use the restroom.  She began to vomit blood and fainted.  She was transported to Shore Memorial Hospital, where emergency room physicians diagnosed her with an upper gastrointestinal bleed.  She refused gastrointestinal evaluation and an endoscopy, so the hospital physicians were only able to speculate as to the cause of her condition.  Hickman's Response To Motion For Summary Judgment, exhibit "A".

On February 7, 2011, Hickman was discharged from the hospital in stable condition.  Her discharge summary did not pinpoint the cause of her condition.  It provided the following diagnosis: "Syncope, possible associated gastrointestinal bleed. The patient refuses gastrointestinal evaluation and endoscopy at this time … syncope of uncertain etiology.  The *possibility of steroid-induced gastrointestinal bleed is entertained along with a syncopal episode or syncope based on hypotension*."  Appellees' Motion For Summary Judgment, exhibit "A".

On March 8, 2011, Hickman had an office visit with Dr. Shor-Conroy.  Hickman's records from that visit stated that she should not receive steroids.  Dr. Shor-Conroy referred Hickman to a hematologist, Dr. Peter Ennis, for further treatment.  On March 9, 2011, Dr. Ennis wrote in his records that Hickman "had normal MCV anemia from a steroid-induced upper GI bleed

requiring result transfusion [on] 2/6/11," but he added: "Less likely, but in the differential diagnosis are hypersplenism, hairy cell leukemia, PNH, myeloma and rare inherited syndromes." Hickman's Response To Motion For Summary Judgment, exhibit "B".

On January 25, 2013, Hickman commenced a civil action against Appellees. She alleged that Dr. Shor-Conroy was negligent for prescribing steroids because this medication was improper for patients with a history of bariatric surgery. Appellees subpoenaed Hickman's medical records and took Hickman's deposition, but Hickman did not depose Dr. Shor-Conroy or any other individual involved in her care. Nor did Hickman produce an expert report critical of the care provided by Appellees. Instead, Hickman contended that her medical records from February 7, 2011 and March 8-9, 2011 were "expert reports".

Appellees filed a motion for summary judgment arguing that Hickman could not establish a *prima facie* case of medical malpractice due to her failure to produce an expert report in support of her theories of causation and breach of the standard of care. Alternatively, Hickman argued that no expert report was necessary because this matter involved *res ipsa loquitur* (also known as "*res ipsa*").

On July 16, 2014, the trial court granted summary judgment to Appellees. Hickman filed a timely notice of appeal, and the trial court filed a Pa.R.A.P. 1925(a) opinion without ordering Hickman to file a statement of

matters complained of on appeal. The trial court agreed with Appellees that the progress notes from Hickman's treating physicians were not critical of Appellees and thus failed to establish a *prima facie* case of medical malpractice. The court rejected Hickman's *res ipsa* claim on the ground that the issues were beyond the ken of jurors who lacked medical experience or training, and therefore Hickman's case ran aground without expert testimony.

Hickman's appellate brief lists three issues in the Statement Of Questions Involved:

> 1. Did the trial court err in finding that Hickman failed in a timely manner to provide expert reports which showed that Dr. Shor-Conroy's prescription of oral steroids [] caused Hickman's injuries?
>
> 2. Did the trial court err in finding that there is no genuine issue of material fact for a jury to consider when it failed to recognize the application of the doctrine of *res ipsa* [] to establish the necessary causation element of negligence?
>
> 3. Did the trial court err in failing to recognize that the treating physicians were proper experts who stated in their medical records that the cause of Hickman's gastric bleed was due to the improper prescription of oral steroids by Dr. Shor-Conroy?

Brief for Appellant, p. 5.

Hickman, however, only raises two arguments in the argument section of her brief. These issues, which we re-order for the sake of convenience, are as follows: (1) the records of her hospitalization and post-hospitalization treatments constitute "expert reports" that preclude summary judgment;

and (2) summary judgment was improper under the *res ipsa* doctrine. We will limit our review to these two issues. ***Harris v. Toys "R" Us-Penn, Inc.,*** 880 A.2d 1270, 1279 (Pa.Super.2005) (failure to develop argument with citation to and analysis of relevant authority waives that issue on review).

At the outset, we note that our scope of review of an order granting summary judgment is plenary. ***Fessenden v. Robert Packer Hospital***, 97 A.3d 1225, 1229 (Pa.Super.2014). Our standard of review is well-settled: we will reverse the trial court's order only when the trial court committed an error of law or clearly abused its discretion. ***Id***. In evaluating the trial court's decision, we focus on Pa.R.Civ.P. 1035.2, which states that the court may enter summary judgment where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. ***Id***. We view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. ***Id***. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. ***Id***. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law." ***Id***.

The following standard applies to Hickman's medical malpractice action:

> Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act. Because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm. *With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation*.

*Quinby v. Plumsteadville Family Practice Inc.,* 907 A.2d 1061, 1070–71 (Pa.2006) (citations omitted) (emphasis added). Although the expert medical witness need not use special language or "magic words", he must state an opinion within a reasonable degree of medical certainty. *Gartland v. Rosenthal*, 850 A.2d 671, 677 (Pa.Super.2004). An expert's failure to express an opinion with the requisite certainty makes summary judgment proper. *Id*.

Guided by these standards, we address Hickman's first argument that the trial court erred by concluding that she failed to provide an expert opinion that appellees breached the standard of care or that this breach caused her injuries. She insists that the medical records from February 7,

2011 and March 8-9, 2011 constitute expert reports which preclude summary judgment. We disagree. Assuming *arguendo* that the records constitute expert reports, none of the records state, within a reasonable degree of medical certainty, that Hickman's injuries are the result of a steroid-induced gastrointestinal bleed. The discharge summary from Shore Memorial Hospital states that "the possibility of steroid-induced gastrointestinal bleed *is entertained along with* a syncopal episode or syncope based on hypotension." Appellees' Motion For Summary Judgment, exhibit "A" (emphasis added). Dr. Ennis first identifies Hickman's condition as "normal MCV anemia from a steroid-induced upper GI bleed" but then states: "Less likely, but in the differential diagnosis are hypersplenism, hairy cell leukemia, PNH, myeloma and rare inherited syndromes." Hickman's Response To Motion For Summary Judgment, exhibit "B". These remarks are simply too equivocal to constitute an opinion within a reasonable degree of medical certainty that Hickman's illness is the result of Dr. Shor-Conroy's steroid prescription. *Cf. Griffin v. University of Pittsburgh Medical Center–Braddock Hosp.*, 950 A.2d 996, 1002-03 (Pa.Super.2008) (medical expert's opinion that patient's shoulder injury was caused either by grand mal seizure or from medical personnel negligently restraining her, that, of two possibilities, it was "most likely" restraint attempt, that he gave 51 to 49% consideration in favor of restraint, and that restraint was "least implausible" consideration, was not opinion that injury was caused by

restraint to reasonable degree of medical certainty, as required for patient to sustain claim of medical malpractice against hospital); ***Hoffman v. Brandywine Hosp.***, 661 A.2d 397, 402 (Pa.Super.1995) (expert did not testify to requisite degree of medical certainty by rendering opinion that defendant's negligent treatment of HIV-positive patient "*in all likelihood* delayed the administration of anti-viral medication which *may have hastened* the onset of opportunistic disease in [the plaintiff] and caused her illness to progress sooner than it might have") (emphasis in original).

Second, we reject Hickman's argument that *res ipsa* precludes summary judgment. *Res ipsa* "is merely a shorthand expression for a rule of evidence that allows a jury to infer negligence and causation where the injury at issue is one that does not ordinarily occur in the absence of negligence." ***Bearfield v. Hauch***, 595 A.2d 1320, 1322 (Pa.Super.1991). Section 328D of the Restatement (Second) of Torts defines *res ipsa* as follows:

> *Res Ipsa* []
>
> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
>> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>>
>> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

>>> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

>>> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

>>> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

*MacNutt v. Temple Univ. Hosp., Inc.,* 932 A.2d 980, 983 (Pa.Super.2007) (citing Restatement (Second) of Torts § 328D).

*Res ipsa* "is not often applied in medical malpractice actions; except in the most clear-cut cases, *res ipsa* [] may not be used in a medical malpractice action to … shortcut the requirement that causation be established within a reasonable degree of medical certainty." *Grandelli v. Methodist Hosp.,* 777 A.2d 1138, 1147 (Pa.Super.2001). In cases of **obvious** medical negligence, *i.e.,* circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert, *res ipsa* applies, and no expert medical testimony is necessary. *Fessenden*, 97 A.3d at 1230 (patient who underwent surgery to remove surgical sponge from inside his abdomen and to repair adjacent abdominal abscess was entitled to *res ipsa* inference; patient established that sponges were not usually left inside of a patient's abdomen following surgery absent negligence, and there was no explanation for sponge's presence inside his abdomen other than negligence by medical defendants,

and patient's claims were well within the intended scope of *res ipsa* doctrine).

On the other hand, "if there is any other cause to which with equal fairness the injury may be attributed (and a jury will not be permitted to guess which condition caused the injury), an inference of negligence will not be permitted to be drawn against defendant." *MacNutt*, 932 A.2d at 987 (*res ipsa* not applicable in malpractice action brought by patient who allegedly suffered chemical burn to his shoulder during surgery to correct thoracic outlet syndrome, since parties' experts intensely disputed exact nature of patient's injury; patient's expert opined that patient sustained chemical burn resulting from lying in pool of certain solution for extended period of time, whereas surgeon's expert opined that patient suffered outbreak of herpes zoster or shingles, and because nature of injury was itself in dispute, injury could have occurred without negligence); *see also* *Griffin*, 950 A.2d at 1005 (*res ipsa* not applicable in medical malpractice action; patient's shoulder injury could have occurred in absence of any negligence by medical personnel, since patient's medical expert testified that shoulder injury could have been caused by patient suffering violent grand mal seizure).

In this case, Hickman's medical records do not give rise to a *res ipsa* inference against Appellees. Instead of definitively ruling out other causes of her gastrointestinal bleed, the records state that there are other possible

causes of her injury, including a syncopal episode and "hypersplenism, hairy cell leukemia, PNH, myeloma and rare inherited syndromes." Because Hickman's injuries could have resulted from causes other than Appellees' negligence, a *res ipsa* inference is not permissible. ***MacNutt***, ***Griffin***, ***supra***.

For these reasons, we affirm the trial court's order granting summary judgment to Appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/23/2015</u>