J-A13028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| T.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| E.R.S., | |
| Appellant | No. 1922 WDA 2015 |

Appeal from the Order entered November 10, 2015,
in the Court of Common Pleas of Westmoreland County,
Civil Division, at No: 917 of 2014-D

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 1, 2016**

Appellant, E.R.S. (Mother), appeals from the November 10, 2015 order in the Court of Common Pleas of Westmoreland County granting the petition for modification of the existing custody order filed by T.S. (Father), with respect to the parties' daughter, I.R.S. (Child), born in December of 2005. Upon careful review, we affirm.[1]

We summarize the relevant factual and procedural history as follows. On May 27, 2014, Father filed a petition for modification of the existing custody order, wherein he requested primary physical and shared legal custody of Child.  The existing custody order, issued by the Court of Common Pleas in Cambria County upon consent of the parties on July 19,

---

[1]  The underlying custody matter in the Court of Common Pleas of Westmoreland County was presided over by the Honorable John J. Driscoll.

2012, granted them shared legal custody, Mother primary physical custody, and Father partial physical custody on alternating weekends and on Wednesday evenings after school to 8:00 p.m. if the parties reside no more than fifteen miles apart.[2, 3]  During the summer, the order granted Father partial custody on alternating weekends, and every Tuesday at 5:00 p.m. to Wednesday at 8:00 p.m.  In addition, the order granted Father one week of custody during the summer of 2012, and two non-consecutive weeks of custody during subsequent summers.

In his petition for modification of the July 19, 2012 custody order, Father asserted that Mother has failed to provide and/or encourage a healthy lifestyle for Child, which has contributed to her Body Mass Index (BMI) classification in the 99th percentile.  Further, Father asserted that Mother has failed to promote daily hygiene practices for Child, and that she has engaged in behavior that has alienated Child from him, *inter alia*.

On June 17, 2014, Mother filed an answer with new matter to the petition for modification wherein she requested, in part, that the court

---

[2] Mother resided with Child in Cresson, in Cambria County, when the court issued the existing custody order.  By order dated July 5, 2013, the Cambria County Court of Common Pleas granted Mother's request to relocate with Child to Derry, in Westmoreland County.  Throughout the history of this case, Father has resided in Blairsville, in Indiana County, in his parents' home.

[3] The July 5, 2013 order in the Cambria County Court of Common Pleas expressly granted Father "additional periods of partial custody every Wednesday from approximately 3:00 p.m. to 8:00 p.m. because it is agreed that the parties will reside within 15 miles of one another. . . ."  Order, 7/5/13, at ¶ 4.

permit Child to attend public elementary school rather than Christ the Divine Teacher, a Catholic elementary school, in Latrobe, in Westmoreland County, where Child had recently completed second grade.[4]

Thereafter, on July 25, 2014, Mother filed a petition for contempt against Father. Following a hearing, by order dated September 17, 2014, the trial court denied Mother's petition. Further, the court ordered the parties to engage in co-parenting counseling.

The trial court held a pre-trial conference on Father's petition for modification on January 13, 2015. By order dated January 20, 2015, the court directed the parties to continue with co-parenting counseling, and to arrange for individual counseling for Child. In its opinion that accompanied the order, the court stated, "[i]f satisfactory progress is not made, [with respect to the parties engaging in counseling, as well as agreeing on the school selection for Child and on a custody schedule,] a trial will be scheduled at the end of the school year (or earlier) on motion of either party." Trial Court Opinion, 1/20/15, at 2.

On March 13, 2015, Mother filed a petition to schedule a hearing on the school selection dispute for the 2015-2016 school year. The court held a hearing on May 19, 2015, during which it interviewed Child *in camera*

---

[4] By order dated August 4, 2014, the trial court directed Child to continue attending Christ the Divine Teacher elementary school during the 2014-2015 school year, *inter alia*.

J-A13028-16

without counsel present. The court did not enter a ruling but, rather, scheduled a hearing for June 2, 2015.[5] Trial Court Opinion, 5/19/15 at 3.

On June 12, 2015, Mother filed a petition for contempt against Father and a separate petition for an emergency hearing on custody. Likewise, Father filed a petition for contempt against Mother.[6]

An evidentiary hearing occurred on June 30, 2015, during which the court conducted another *in camera* interview of Child. By order dated July 2, 2015, the trial court granted the parties' respective petitions for contempt and denied Mother's petition for an emergency hearing. In the opinion that accompanied the order, the court summarized the testimony presented by Mother regarding a recent custody exchange as follows:

> Mother presents three other witnesses who were present when Father attempted to pick [C]hild up at Mother's residence for his visit. According to the maternal step-grandfather and maternal uncle, Mother requested that her family be present in case an issue arose when Father came for the exchange. They testify that they knew [C]hild did not want to go and that they all encouraged her to tell Father. The third witness called was Mother's next-door neighbor who was outside on his porch and a witness to the encounter from the outside, which is where Father remained throughout the exchange. These three witnesses contradicted each other as well as Mother's testimony, therefore their testimony is discredited, as is some of Mother's.

---

[5] The certified record includes the notes of testimony from the hearing on June 2, 2015. Mother was the only witness who testified during that hearing. However, there is no written order in the record resulting from that hearing.

[6] The trial court noted that Father filed a petition for contempt alleging that he "has not received his custody time since" June 2, 2015. Order, 7/2/15, at 1. Based upon our review, Father's petition for contempt is not included in the certified record.

4

Trial Court Opinion, 7/2/15, at 2.

Mother filed a new petition for contempt on July 27, 2015, and a separate petition for special relief wherein she requested that the trial court issue an order determining the elementary school dispute between the parties.

A hearing on Father's petition for modification and Mother's above-described petitions occurred on August 13 and 28, 2015. Father testified on his own behalf. In addition, Father presented the testimony of Christopher Paul Valia, M.D., Child's pediatrician, by phone; Allen Knepp, the caseworker from the Westmoreland County Children's Bureau; V.L.S. (Paternal Grandmother); and Mother, as on cross-examination. Mother testified on her own behalf, and she presented the testimony of D.M. (Maternal Grandmother).

By order dated November 10, 2015, the trial court granted the parties shared legal custody, Father primary physical custody, and Mother partial physical custody on the first, second, and fourth weekends each month. During the week when Mother does not have physical custody on the upcoming weekend, the court granted her custody from Wednesday after school until the return to school on Thursday. In addition, the court directed that Father "may make the determination as to the school in which [C]hild is to attend." Order, 11/10/15, at ¶ 1. During the summer, the court directed

that the parties share physical custody on a week on/week off basis. Further, the court set forth a holiday schedule.[7]

On December 3, 2015, Mother timely filed a notice of appeal.[8] The trial court filed a Pennsylvania Rule of Appellate Procedure 1925(a) opinion on December 23, 2015.

Mother presents the following issues for our review:

A. Was it error for the [trial court] to award primary physical custody to [] Father when considering the evidence presented and evaluating said evidence pursuant to the custody factors outlined in 23 Pa.C.S. § 5328?

B. Was it error by the [trial court] when the court did not apply any weight to factor four, regarding stability, when the record shows that Mother has always been the primary custodian and primary caregiver[?]

C. Was it error by the [trial court] to not adequately explain factor ten, regarding which party is more likely to attend to the daily physical, emotional, developmental, and educational needs of the child since she has attended to those needs of the minor child[?]

D. Was it error by the [trial court] to hold that factor thirteen favored [] Father?

---

[7] On December 2, 2015, the court amended the custody order with respect to the Thanksgiving holiday schedule.

[8] Mother did not concurrently file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 905(a)(2) and Pa.R.A.P. 1925(a)(2)(i). Consequently, by order dated December 9, 2015, the trial court directed Mother to file the concise statement, and she timely complied. Because no party claims prejudice as a result of Mother's procedural violation, we will not quash or dismiss her appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009); *Cf. J.P. v. S.P.*, 991 A.2d 904 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's order to file a concise statement).

Mother's Brief at 5.[9]

Our scope and standard of review in custody matters is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted)

(emphasis added).

Further, we have stated the following.

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

---

[9] Mother does not include the first issue in the statement of questions involved in the argument section of her Brief. **See** Pa.R.A.P. 2119(a) (stating, in part, "the argument shall be divided into as many parts as there are questions to be argued"). Therefore, we are unable to address it. **See MacNutt v. Temple University Hospital, Inc.,** 932 A.2d 980, 992 (Pa. Super. 2007) (*en banc*) (appellants have burden of developing claims on appeal and arguments that are not appropriately developed are waived).

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting*

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

Child custody actions are governed by the Child Custody Act, 23 Pa.C.S. §§ 5321-5340. In considering modification of an existing custody order, "a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5328(a). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *quoting **Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004). Section 5328(a) provides the following factors a trial court must consider.

### § 5328. Factors to consider when awarding custody.

**(a)  *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

8

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). We have further explained as follows.

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

Instantly, the trial court considered the Section 5328(a) custody factors and delineated the reasons for its decision in an opinion that accompanied the subject order. *See* Trial Court Opinion, 11/10/15. The court determined that Section 5328(a)(3), (7), (9), and (10) weighed "slightly" in favor of Mother. The court weighed Section 5328(a)(1), (8), and (13) in favor of Father. The court found that the following factors

10

weighed in favor of neither party: Section 5328(a)(2), (2.1), (4), (5), (6), (11), (12), (14), and (15).

In fashioning its custody order, the court found determinative Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, and Section 5328(a)(8), the attempts of a parent to turn the child against the other parent. The court explained as follows.

> Even more . . . concerning to the [c]ourt[] is the resistance Mother has to [C]hild having a relationship and bond with Father. The allegations made by Mother against Father, even if true,[5] are not sufficient for a finding that Father cannot provide for [C]hild or that she is in danger while in his custody. Father believes that, if Mother retains physical custody and is permitted to enroll [C]hild in the Derry School District, he will not be able to maintain a relationship with [C]hild due to Mother's actions. . . . Mother and her family have made their feelings regarding Father clear to [C]hild[6] and their failure to stop these behaviors indicate[s] that they will continue throughout [C]hild's life, as will Father's missed visits.

_____

[5] It should be noted that [C]hild's testimony is somewhat contradictory to the allegations, as was the testimony from Mother's own witnesses. Regarding the incident in June, Mother called a neighbor who was outside the residence during the incident, Child's uncle, and Child's maternal grandparents. The testimony of these individuals were inconsistent (one example being that [M]aternal [G]randmother testif[ied] that she heard Father yelling while she was in the house, however the uncle and neighbor both testified that Father never raised his voice).

[6] The testimony regarding [C]hild being informed of what [P]aternal [G]randmother testified to while in court as well as being shown court documents holds weight as [C]hild has questioned the court previously regarding this case and adult issues which she should not have been informed of. Additionally, [M]aternal [G]randmother's testimony focused more on her strong feelings as to how Father views Mother and

11

her family, more so than how Father provides for [C]hild. Sharing feelings like these with [C]hild will have the result of alienation, whether Mother and her family intend to or not.

Trial Court Opinion, 11/10/15, at 12.

Turning to Mother's issues on appeal, she argues in her second issue that the court erred and abused its discretion by not properly weighing Section 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life. Specifically, Mother argues that the court erred in failing "to determine which party or, which custody arrangement, promotes stability and continuity in [C]hild's life." Mother's Brief at 12. In addition, Mother argues that the court abused its discretion in failing to weigh this factor in her favor because she has always been Child's primary caregiver.

In its opinion accompanying the subject order, the trial court found as follows:

As with any child [] custody case, stability is important. . . . Both parties wish to change a major circumstance in [C]hild's life, Father seeking to change her primary residence and Mother requesting to change her school[.] [T]herefore, it doesn't appear that either is arguing that she has a special or significant need for stability and continuity, or that changing either of these things would be detrimental to [C]hild.

Trial Court Opinion, 11/10/15, at 8. In its Rule 1925(a) opinion, the court further explained:

[C]hild would face some sort of instability regardless of what the undersigned ordered. Had Mother's request been granted by the undersigned, [C]hild would have changed schools, from a school

she has been attending most of her life and doing well, to a school with which she was not familiar.

The trial court did not find that either change . . . would be detrimental to [C]hild's well-being[.] [T]he fact that both parties were suggesting drastic changes, it is assumed that they do not believe there is a special need for stability, outside of the preferred practice of maintaining as much stability as possible, while keeping what is in the best interest of the child.

Additionally, the testimony of Mother established that she has resided at six (6) different addresses throughout [C]hild's life. Although Mother has been the primary caretaker, [C]hild is used to some instability with regard to residence.

Trial Court Opinion, 12/23/15, at 4.

Upon careful review, we conclude that the trial court indeed considered which custody arrangement would promote stability and continuity in Child's life. Importantly, the court was not required to give weighted consideration to Mother's historical role as Child's primary caretaker when considering the statutory factors. *See W.C.F. v. M.G.*, 115 A.3d 323, 330 (Pa. Super. 2015) (citing *M.J.M v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013)). As such, we discern no abuse of discretion by the court in the weight it placed upon Section 5328(a)(4) in fashioning its custody order. Mother's second issue fails.

In her third issue, Mother argues that the trial court abused its discretion in failing to consider Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child. Mother asserts that the court merely stated that this factor was addressed in its consideration of Section 5328(a)(9),

which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs. Further, Mother asserts that, in considering Section 5328(a)(9), the court did not consider Child's daily needs, but only her emotional needs.

We note that the trial court weighed Section 5328(a)(10) "slightly" in favor of Mother. Moreover, we disagree that the court failed to consider adequately Child's daily needs under this factor. The court concluded, in part:

> In consideration of the factors and testimony presented, it is clear to the undersigned that [C]hild is not in danger with either parent[,] and that both parents can provide for the [C]hild's basic needs and aid in her development. Although [C]hild is so strongly bonded with Mother, it seems as though Father could provide an atmosphere more conducive to [C]hild's educational and developmental needs. It does not appear that [C]hild is getting sufficiently disciplined at Mother's residence and that [Child] is making the decisions that need to be made by the adult (i.e. whether or not to go for her Father's visits, which school to attend, showering, brushing teeth, etc.) This was still the case after being brought to the Mother's attention.

Trial Court Opinion, 11/10/15, at 12. Upon review, we deem the court's conclusions reasonable in light of the record evidence. Further, we discern no abuse of discretion by the court in the weight it placed on Section 5328(a)(10) in fashioning its custody order. Mother's third issue fails.

In her fourth and final issue, Mother argues that the trial court abused its discretion in weighing Section 5328(a)(13), the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, in favor of Father. We disagree.

14

The court found as follows.

> The conflict between the parties has been an issue in this case from the outset. There has been evidence presented that both parties are at fault for the conflict and that neither is particularly willing to cooperate with the other. Although this is [a] mutual problem between the parties, it appears to the undersigned that Mother and her family are allowing their conflict with Father to affect [C]hild, whereas Father and his family appear to keep [C]hild more sheltered from it and are more willing to work with [M]other. This is exhibited by Mother and her family's feelings towards Father and how they voice these feelings to [C]hild as well as how she prevents Father from receiving his court[-]ordered time or make-up time for missed visits, even after being told to by the [c]ourt.

Trial Court Opinion, 11/10/15, at 11. In its Rule 1925(a) opinion, the court further explained, "Father appears to shelter [C]hild from the conflicts more so than Mother (for example, showing [C]hild court orders, explaining what happened and what was testified to during court proceedings, and putting [C]hild in the middle to tell Father . . . that she is not going for a visit)." Trial Court Opinion, 12/23/15, at 5.

Upon careful review, we conclude that the court's findings with respect to Section 5328(a)(13) are supported by the testimonial evidence. As such, we discern no abuse of discretion by the court in weighing this factor in Father's favor. Mother's fourth issue fails.

In conclusion, we hold that the trial court carefully and thoroughly considered Child's best interests in fashioning its custody award. We discern no abuse of discretion. Accordingly, we affirm the custody order.

Order affirmed.

15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2016