J-A27025-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| K.S.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H.B. | : | |
| | : | |
| Appellant | | No. 574 WDA 2017 |

Appeal from the Order March 8, 2017
In the Court of Common Pleas of Warren County Civil Division at No(s):
AD 84 of 2016

BEFORE:   BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    FILED DECEMBER 22, 2017

H.B. ("Mother") appeals from the March 8, 2017 custody order that granted, in part, her petition to modify the existing custody order with respect to her son, B.A.  Upon careful review, we affirm.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual and procedural history of this case, which the testimonial evidence supports.  As such, we adopt it herein.  Trial Court Opinion, 5/4/17, at 1–5.

By way of background, B.A. was born out-of-wedlock in April of 2013. Initially, he lived with Mother and K.S.A. ("Father").  N.T., 3/8/17, at 48.  On March 7, 2016, Father, pro se, initiated the underlying custody action, wherein he alleged that Mother suffered from a mental disability and had threatened suicide.  Complaint, 3/7/16, at ¶ 7.  Father further asserted that

on March 4, 2016, Mother physically assaulted him and damaged the automobile of E.A.B., his girlfriend.[1]  Id.  In addition, Father alleged that he also was filing a Protection from Abuse ("PFA") petition against Mother.[2]  Based on these allegations, Father requested sole legal and physical custody of B.A.  Complaint, 3/7/16, at ¶ 6.

Following a custody conciliation conference, the trial court issued an interim custody order on April 14, 2016, granting the parties shared legal custody, Father primary physical custody, and Mother supervised physical custody on Monday and Wednesday evenings from 5:15 p.m. to 7:15 p.m.  Interim Order, 4/14/16, at ¶¶ I & II.

_____

[1]  In March of 2016, Mother pleaded guilty to the following criminal charges arising from the incident: fleeing and eluding a police officer; criminal mischief; and harassment.  Trial Court Opinion, 5/4/17, at 1.  On August 26, 2016, the common pleas court sentenced Mother to a term of incarceration in the Warren County Jail for a minimum period of one day to a maximum of two years less one day, with credit for time served of one day and eligibility for immediate parole.  N.T., 3/8/17, at Respondent's Exhibit 2.

We observe that the trial court used the terms "parole" and "probation" interchangeably in its Pa.R.A.P. 1925(a) opinion.  Mother's counsel explained to the trial court on the record that "the pre-sentence investigation report does give [Mother] credit for one day of time served and I think that is what led adult probation to consider it a parole sentence." N.T., 3/8/17, at 49.

[2]  On March 16, 2016, the trial court issued a PFA order against Mother on behalf of Father and E.A.B., with an expiration date of March 16, 2019.  Upon the parties' agreement, the trial court amended the PFA order to permit Mother's and Father's communication regarding custody issues via the "Our Family Wizard" web-based application.  Petition for Contempt, 2/28/17, at ¶ 6-7; Custody Order, 7/11/16, at ¶ V.

By agreed-upon order dated July 11, 2016 ("existing custody order"), the court granted the parties shared legal custody, Father primary physical custody, and Mother partial physical custody on a two-week rotating schedule. Order, 7/12/16, at ¶ I. In week one, Mother was granted custody from Sunday at 5:00 p.m. until Tuesday at 5:00 p.m. In week two, Mother was granted custody from Saturday at 5:00 p.m. until Tuesday at 5:00 p.m. Id. at ¶ II.

On September 1, 2016, Mother filed a petition to modify the existing custody order wherein she alleged that she entered into the agreed-upon existing custody order because of her "understanding that the [c]ourt, exercising caution and prudence, was unwilling at the time to award primary custody due to pending criminal charges." Petition, 9/1/16, at ¶ 8. Mother reported that the "criminal case against [her] has been completely resolved. . . ." Id. at ¶ 9.

A custody hearing occurred on March 8, 2017,[3] during which Mother testified on her own behalf. Mother requested primary physical custody of B.A. with a schedule that was consistent with that of her seven-year-old

_____

[3] On February 28, 2017, Father had filed a petition for contempt against Mother, wherein he alleged that Mother violated their shared legal custody agreement by unilaterally deciding that B.A. would receive professional counseling. The trial court heard evidence on the petition for contempt during the March 8, 2017 hearing. We note that the transcript of this hearing is identified with an incorrect date. The hearing was held on March 8, 2017, not 2016, as labeled.

daughter, C.S., the half-sister of B.A., for whom she has court-ordered primary physical custody. The father of C.S. exercises partial physical custody every weekend. N.T., 3/8/17, at 54, 80; Exhibit 3. In addition, Mother presented the testimony of F.B., her father, and Anthony D. DeMarco, Ph.D., who performed a psychological assessment of Mother in April of 2016.

Father testified on his own behalf; he proposed that Mother have partial physical custody every week from Monday until Thursday afternoon. N.T., 3/8/17, at 225-226. In addition, he presented the testimony of P.M., the paternal grandmother of C.S., Mother's older female child, who is not a subject of this appeal; E.A.B., Father's fiancée; and Keith A. and Kim A., Father's parents.

By order dated March 8, 2017, and filed on March 9, 2017, the trial court amended the existing custody order by granting Mother partial physical custody every Monday through Thursday afternoon.[4] Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on May 4, 2017.

_____

[4] In addition, by separate order dated on March 8, 2017, and filed on March 9, 2017, the trial court found Mother in contempt. The court sanctioned Mother by directing her to pay for all invoices submitted by the provider for the medical evaluation performed on B.A. on December 2, 2016. Mother did not file a notice of appeal from this order.

On appeal, Mother presents the following issues for our review:

Question 1:

Did the trial court err in finding that [Mother], at time of trial in this matter, still faced pending criminal charges when those charges had been fully adjudicated and disposed of?

Question 2:

Did the trial court err in not awarding [Mother] at least equally-shared custody of the minor child when consideration of all relevant statutory factors indicated that equally-shared custody is appropriate?

Question 3:

Did the trial court err by giving substantial weight to [Mother]'s criminal charges and predicating its opinion upon what the court believed to be instability or uncertainty in [Mother's] life as a result of the charges?

Question 4:

Did the trial court err by denying [Mother] the opportunity to admit any facts or evidence of any event or circumstance prior to September of 2016, the date of [Mother's] Motion to Modify Custody, while allowing [Father] to admit myriad evidence of events between the parties from several periods prior to September 2016?

Mother's Brief at 8.

In custody cases under the Child Custody Act ("the Act"), 23 Pa.C.S.

§§ 5321–5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses

first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012) (internal citation omitted). This Court "will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings." M.G. v. L.D., 155 A.3d 1083, 1091 (Pa. Super. 2017) (citing S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014)).

Further, we have stated the following:

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." Saintz v. Rinker, 902 A.2d 509, 512 (Pa. Super. 2006), (citing Arnold v. Arnold, 847 A.2d 674, 677 (Pa. Super. 2004)).

Child custody actions are governed by the Act, which became effective on January 24, 2011. Trial courts are required to consider "[a]ll of the

factors listed in section 5328(a) . . . when entering a custody order."

J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

This statutory section provides as follows:

§ 5328. Factors to consider when awarding custody.

(a) Factors. – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

We have further explained as follows:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa. Super. 2013), appeal denied, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered

and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V. v. S.T., 87 A.3d 818, 822 (Pa. Super. 2014).

Instantly, the trial court set forth its assessment of the custody factors on the record in open court.[5] N.T., 3/8/17, at 304–314. The trial court observed that Mother's petition to modify the existing custody order was premised upon the allegation that her criminal matter was completely resolved. Because Mother's term of parole would not expire until August of 2018, the court disagreed. Id. at 49, 107, 304, 317-318. Nevertheless, the court found that Mother "is in a position to parent and the father certainly understands that as well." Id. at 318. The court provided the following rationale for the subject order in its Rule 1925(a) opinion:

_____

[5] The court weighed the majority of the custody factors equally between the parties. The court found that Section 5328(a)(6), the child's sibling relationships, favored Mother due to the half-sibling relationship between B.A. and C.S., of whom Mother has primary physical custody. The court found that Section 5328(a)(14), the history of drug or alcohol abuse of a party or member of the party's household, favored Father insofar as Mother's boyfriend, with whom she does not reside, has a history of heroin use and was sentenced for two DUIs in October of 2015. Trial Court Opinion, 5/4/17, at 2. As such, the subject order directs that any contact between Mother's boyfriend and B.A. must be supervised. Order, 3/8/17, at ¶ V. The court placed determinative weight on Section 5328(a)(4), the need for stability and continuity in the child's life, family life, and community life, and found "remarkable stability in the last year." N.T., 3/8/17, at 107.

The [c]ourt reviewed the [statutory] factors and determined that adjusting the custody schedule was optimal to both the child and the parents given the father's work schedule and the mother's current status of unemployment. The schedule is essentially four days with [Father] and three days with [Mother]. Given the circumstances where both of the parties have shared in the life of the child throughout the child's life[,] and [Mother's] mental health improvement but still being subject to supervision with probation as well as the current PFA that [Father] has protecting himself and his fiancée, the court believes that the schedule is in the best interest of the child. Evaluating the parties[']' current relationships, [Father] is in a position to marry his paramour within the month. [Mother] is in a relationship with a man who is currently in recovery from heroin addiction and has a recent history of DUI.

Trial Court Opinion, 5/4/17, at 6.

Turning to the merits of Mother's issues on appeal, her first and third issues are interrelated. Mother first argues that the trial court erred in finding that she continues to face pending criminal charges. We disagree. Indeed, the court accurately stated in its Rule 1925(a) opinion that it "never found that [Mother] still had outstanding criminal charges but rather[,] that her term of [parole] was not yet complete." Id. Therefore, we reject Mother's first issue.

In her third issue, Mother contends that the trial court erred by giving substantial weight to Mother's "past criminal charges and their lasting effects on her life." Mother's Brief at 31. Mother refers us to the trial court's statement on the record in open court, as follows:

There was testimony today that [Mother] is subject to a sentence and that sentence was on August 26th, 2016. The sentence means that [Mother] is still on parole. She has not been released from parole. So in the [c]ourt's opinion[,] the

matter is not entirely resolved because . . . until the parole is completed, the [c]ourt takes the position that there's revocation proceedings that can happen if someone isn't following the terms and conditions of their parole. . . . [H]er case is not completely resolved.

N.T., 3/8/17, at 303–304. Specifically, Mother avers that the criminal offenses to which she pled guilty are not among those enumerated in 23 Pa.C.S. § 5329 (Consideration of criminal conviction), which requires that trial courts "consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody. . . ." 23 Pa.C.S. § 5329(a). In support of her argument, Mother cites K.T. v. L.S., 118 A.3d 1136 (Pa. Super. 2015), wherein this Court held that the trial court erred by admitting into evidence prior criminal offenses by the grandmother, who was seeking partial physical custody of the subject children, and her paramour, which were not among those listed in Section 5329. We concluded in K.T. that the admission of evidence in this regard was not proper under Section 5328(a)(16) ("any other relevant factor"), "where the Act expressly delineates those criminal convictions which are relevant to a custody determination, and the offenses at issue are not among those listed." K.T., 118 A.3d at 1169 (citations omitted).

Unlike the paternal grandmother in K.T., Mother did not object during the hearing to the admission of the evidence concerning the criminal offenses to which she pled guilty and her criminal sentence. As such, Mother has not preserved this issue for our review. Tecce v. Hally, 106 A.3d 728,

732 (Pa. Super. 2014) ("It is axiomatic that, to preserve an objection for appeal, the objection must be raised before the trial court."); MacNutt v. Temple Univ. Hosp., 932 A.2d 980, 992 (Pa. Super. 2007) (holding that in order to preserve an issue for appellate review, litigants must make timely and specific objections during trial).

Even if Mother had preserved the issue, we would discern no abuse of discretion in this case, where there is no dispute that Mother has a history of depression and anxiety. In its Rule 1925(a) opinion, the trial court found as follows:

> [Mother] has had a history of mental health issues and appears to do well with treatment for short periods of time. She is currently on parole and is being monitored by both the parole system and her mental health providers. She has improved as the court noted in comments on the record. She has not demonstrated a substantial period of time in treatment but the court did note her improvement. The [c]ourt also noted that she had not completed her sentence. While there are no outstanding criminal charges at this time, the sentence will only be completed when she completes her term of probation.

Trial Court Opinion, 5/4/17, at 5–6. Based on Mother's mental health history, we deem reasonable the court's decision to grant Mother only partial physical custody. While the order granted Mother's request for expanded partial custody more consistent with the availability of C.S., who is with her father every weekend, the trial court continued to limit partial custody of B.A. due to Mother's mental health issues and the fact that her criminal sentence remained pending. Under these circumstances, we do not find this to be an abuse of discretion.

In her second issue, Mother contends that the court abused its discretion in not granting, at a minimum, equally shared physical custody. Mother contends that Subsections 5328(a)(3), (4), (5), (6), (10), and (12) favor her and that the remaining best-interest factors favor neither party. Upon thorough review, we discern no abuse of discretion by the trial court. Indeed, competent record evidence supports the court's factual findings. Further, it is well established that parties "cannot dictate the amount of weight the trial court places on evidence." A.V. v. S.T., 87 A.3d at 820. Therefore, we reject Mother's second issue.

In her fourth and final issue, Mother argues that the trial court erred in denying her "the opportunity to admit any facts or evidence of any event or circumstance [that occurred] prior to September of 2016," when she filed the subject petition to modify the existing custody order. Mother's Brief at 35. However, Mother wholly fails to identify any facts or evidence she sought to admit. Id. at 35–36. Mother asserts that the court permitted Father to introduce evidence of events that occurred between the parties prior to September of 2016. Specifically, she contends that the trial court permitted Father and Keith A., B.A.'s paternal grandfather, to testify "about a 'knife incident' that occurred several years ago." Id. at 36. Mother claims that the court's evidentiary rulings prejudiced her.

This Court has stated as follows:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility

are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

Phillips v. Lock, 86 A.3d 906, 920 (Pa. Super. 2014) (quoting Stumpf v. Nye, 950 A.2d 1032, 1035–1036 (Pa. Super. 2008)).

Upon review, Father testified on direct examination that in March of 2013, when Mother was eight months pregnant with B.A., she threatened him with a knife and then she threatened to kill herself. N.T., 3/8/17, at 205–207. Upon objection by Mother's counsel, the trial court allowed the testimonial evidence to rebut Mother's testimony as follows:

THE COURT: Well, we had testimony earlier that there was no incident with a knife, that this never happened, so certainly [Father's counsel is] allowed to probe whether or not there was an incident with a knife. . . .

And in terms of cyclical mental health, I have been told earlier in testimony that there is no cycle. So if there's something that [Father's counsel] can demonstrate, I will hear it.

The objection is overruled.

Id. at 206. We discern no abuse of discretion or misapplication of the law.

Likewise, Keith A. testified with respect to the "knife incident," for which he alleged he was present. N.T., 3/8/17, at 263–265. Mother's counsel did not object to the admission of this testimonial evidence.

- 14 -

Therefore, Mother's contention that she was prejudiced by Keith A.'s testimony in this regard is not preserved for our review. MacNutt, 932 A.2d at 992.

Based on the foregoing, we will not disturb the custody order. The trial court's consideration of the best interests of B.A. was careful and thorough, and we are unable to find any abuse of discretion. Indeed, the evidence of record supports the trial court's conclusions. Accordingly, we affirm the order.[6]

Order affirmed. Motion to Strike granted.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2017

_____

[6] Father has filed a motion to strike pages five through eight of Mother's Reproduced Record, which is a document entitled, "Individual Progress Note," dated April 22, 2016, and was allegedly written by Laurie Fenton. Father avers that the "document was neither marked nor admitted as an exhibit during the hearing in this case." Motion to Strike, 7/24/17, at ¶ 6. Further, Father alleges that Laurie Fenton "was never identified as a witness nor called to testify." Id. at ¶ 7. As such, Father maintains that the document was improperly included in Mother's Reproduced Record. Upon careful review of the certified record, we agree. Accordingly, Father's motion to strike the document entitled, "Individual Progress Note," set forth on pages five through eight of Mother's Reproduced Record, is hereby granted.